SAMUEL K. GEORGE *vs.* R. SNOWDEN ANDREWS, and MARY LEE ANDREWS, his Wife.

*Purchaser of Land subject to Mortgage—Mortgagor and mortgagee—Principal and Surety—Effect of an Agreement for an Extension of the time of payment of the Mortgage, between the holder of it and the Purchaser, without the concurrence of the Mortgagor.*

Generally one purchasing land subject to mortgage, not only purchases the equity of redemption, but purchases the whole estate, and assumes the payment of the mortgage as part of the purchase money. Generally an express agreement is made to that effect, and the deed is drawn subject to the payment of the money. In such case, as between the parties, the purchaser becomes primarily liable for the debt, and the mortgagor only security; and as between them the mortgaged property becomes the primary fund for the payment of the debt.

The mortgagee may by his dealings with the purchaser and mortgagor, recognize the purchaser as the principal and the mortgagor as only security towards himself.

A purchaser having assumed the payment of an existing mortgage, and thereby become the principal debtor, and the mortgagor a surety of the debt merely, an extension of the time of payment of the mortgage by an agreement between the holder of it and the purchaser, without the concurrence of the mortgagor, discharges him from all liability upon it.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, and IRVING, J.

*Richard M. Venable,* for the appellant.

George *vs.* Andrews and Wife.

*J. Upshur Dennis,* and *Charles Marshall,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The questions in this case arise upon a bill for injunction to stay certain proceedings at law. The Court below granted the injunction, and the plaintiff in the proceedings at law appealed. The principal facts essential to the determination of the controversy are undisputed, and the rest are established by proof. The principal contention is respecting the law applicable to them.

The facts are as follows: On the thirty-first day of July, 1872, the appellees R. Snowden Andrews and Mary Lee Andrews, his wife, executed a mortgage to Archibald George, upon certain premises on North Calvert street, in Baltimore City, belonging to Mrs. Andrews, to secure the sum of five thousand dollars. This mortgage was afterwards in December, 1872, assigned by Archibald George to Samuel K. George the appellant.

In October, 1871, John S. Meredith executed a mortgage to the appellant, upon certain premises, belonging to the mortgagor, upon North Avenue, in Baltimore City, to secure the payment of four thousand dollars.

On November the 4th, 1872, John S. Meredith and Andrews and wife exchanged properties, and Meredith conveyed the North Avenue property to Mrs. Andrews subject to the mortgage from him to George; and Andrews and wife conveyed the North Calvert street property to Meredith subject to the mortgage from them to Archibald George, and which was the following month assigned to the appellant. In this exchange Meredith assumed and agreed to pay the mortgage debt upon the North Calvert street property, and Andrews and wife agreed to pay the mortgage debt of Meredith on the North Avenue property. In addition to this undertaking on the part of Andrews and wife, they agreed to pay Meredith thirty-

five hundred dollars " boot " for difference in value in the exchanged properties; and to secure that sum Andrews and wife executed to Meredith a mortgage for thirty-five hundred dollars payable in three years from date.

After this exchange, the interest notes, on the Calvert street mortgage debt, were given by Meredith to Samuel K. George, the appellant; and the interest notes upon the mortgage on the North Avenue property were given by Andrews and wife to the appellant who collected the same, generally through his bank. When Meredith's mortgage on North Avenue property fell due, Andrews and wife secured indulgence for a while and then paid it off, taking a release under seal dated 19th Oct., 1875. When the thirty-five hundred dollars mortgage to Meredith, on same property, from Andrews and wife fell due in July, 1875, it was extended for one year and then paid off. The appellant collected the interest, from *Meredith,* on the Calvert street mortgage until July, 1875, when the same became due. Then at the *request of Meredith, and without consultation with Andrews and wife and entirely without their knowledge,* for a bonus of one hundred and fifty dollars he extended the period for payment of that mortgage by Meredith for three years; taking interest notes from Meredith on the mortgage debt for that period and marking the principal note of Andrews and wife renewed for three years. When it again fell due, at Meredith's request and without the knowledge of appellees of this or former extension, it was again extended for a consideration of fifty dollars for one year. Interest notes were again taken for the year's interest, and the principal note was again marked extended for one year. This mortgage, under the extension agreements became payable in July, 1879. Default then having been made, proceedings to foreclose were instituted, a decree was obtained and the property sold. After paying expenses the proceeds of sale did not pay the mortgage debt. About

fifteen hundred dollars remained unsatisfied. To recover this deficiency a suit was instituted by the appellant against the appellees, upon the covenant in the mortgage given to Archibald George, which was assigned to the appellant as herein before stated. This was an instrument under seal and a bill in equity was necessary to secure to appellees the benefit of the equitable defence, supposed to result from the character of the dealings between the appellant and John S. Meredith, with respect to the mortgaged property on Calvert street.

In addition to the facts already stated, the bill charged that the appellant had full knowledge of the exchange of property made by the appellees and John S. Meredith, and of the undertaking of each, in that exchange, to pay the debt of the other to the appellant, resting on the property respectively transferred; and that he assented thereto. It also charges that the action of the appellant in extending the time for Meredith to pay the mortgage debt on the Calvert street house, first for three years and then for one year, was entirely without the knowledge or consent of the appellees, and without consultation with them or either of them; and that both the appellant and Meredith regarded the latter as the sole debtor for the $5000 resting on the Calvert street property, and that appellant and appellees acted during that whole period in their transactions on that understanding. It also charges that acting on that understanding, the appellees paid off the whole of the thirty-five hundred dollars debt, created in the exchange and secured by mortgage on the North Avenue property to Meredith; whereas if it had been intimated that they were in any wise to be held responsible for the debt on the Calvert street property, a sufficient amount of the thirty-five hundred dollars debt to Meredith could have been kept back to meet the ascertained deficiency. The complainants then charge that they were released by the appellant George giving direct assent to their recited

agreement with Meredith; but if they were not, still the appellant after the exchange could only look to them as securities for Meredith and that the giving time to Meredith without their consent, knowledge or acquiescence operated to release them. Injunction was accordingly prayed.

The appellant by his answer in effect, admitted the several allegations of the bill except the allegation of knowledge on his part of the exchange between the parties and the alleged arrangement by which each of his debtors was to become answerable for the other's debt to him, which he denies, and also denies that he ever assented to the arrangement, or released or intended to release the appellees from liability for the debt on the Calvert street property. He avers that the transactions with Meredith for extension of time were managed entirely by Mr. Guest as his agent, and he denies he ever received any bonus for the same, or ever knew of it. He also avers that he has brought the suit for the benefit of John C. George his *cestui que trust*.

The case having been brought to hearing upon the proofs in the cause before the Circuit Court for Baltimore City, that Court made the injunction against prosecuting the suit at law perpetual.

In his opinion the learned Judge placing his decree upon the equities resulting to the appellees from the conduct of the appellant in extending the time for Meredith on the Calvert street property, most forcibly and tersely says: "It must be conceded that when Andrews and wife sold this property to Meredith, subject to the mortgage to George, and left their notes for the principal and interest in the possession of George, they had a right to have the property immediately sold upon any default by Meredith in the payment of either principal or interest. This right they could exercise by a demand upon George to pursue his remedy against the property; a demand which he

could not disregard. When therefore by a binding agreement between himself and Meredith he deprived himself of meeting the demand of Andrews and wife, he released them from a liability which he might have averted by a compliance with such demand. This consequence could only have been avoided by a distinct agreement with Meredith, that the suspension of the remedy against the property, was not to be operative, if Andrews and wife should require the property to be sold for their protection on Meredith's default. But I find in the evidence no record of such an agreement."

We find no error in this ruling nor in the reason assigned for it. On the contrary, we think it is fully sustained by the proof in the cause, and justified by the most approved text book authority and judicial decision. The appellant denies in his answer any knowledge of the arrangement between Meredith and Andrews and wife when they exchanged property, to exchange places also in respect to the mortgage obligations to the appellant.

He says also in his testimony, he had no knowledge of it. Notwithstanding this ignorance, in fact, which he asserts, we think the evidence shows a condition of things which ought to affect him with *legal* knowledge thereof,—a condition of things which shows great inattention to the interest notes if he did not know, and a condition which fully justified the appellees in supposing he was cognizant of the whole arrangement, and acting accordingly. For the purposes of this decision and the ground on which we design to rest it, it will be sufficient to show that he must have known of the arrangement at the time the extension to Meredith was accorded. Although the extension agreements were made without any personal interview or intercourse even by letter with Meredith, and were made entirely through his agent Guest. Mr. Guest knew of it and might reasonably be supposed to have informed him, and if he did not tell him, knowledge under such circum-

stances would be imputed through the agent. But knowledge was actually brought home to him; for on the original note of Andrews and wife to Archibald George, (assigned to him,) at the time of the extension, he wrote that the same was extended for three years; and when the second extension was made he again wrote on that note that the same was extended for one year. He was not agreeing with Andrews and wife the makers of the note for an extension. He was dealing with Meredith, and agreeing to give him the additional time within which to pay it. He could make such an agreement, therefore only on the ground that Meredith had assumed to pay that debt, and that he had accepted him as the debtor in the place and stead of the original makers of the note or debt in question. In point of fact the appellant must have known of this arrangement as early as October, 1873.

The mortgage of Meredith for $4000 on the North Avenue property, given to George in 1871, and assumed by Andrews and wife in the exchange, fell due on the 16th of October, 1873. An extension for two years was then granted to him until October, 1875. Guest & Son as the agents of the appellant so informed Meredith by letter on the 14th of July, 1875, when he informs him of the terms on which his extension will be granted. That extension could not have been given by George to Andrews and wife on the North Avenue property without the knowledge that they had acquired the property from Meredith and had assumed its payment. Besides all this, the interest notes from the date of exchange were given respectively by Andrews and wife on the Meredith debt and mortgage on the North Avenue property, and by Meredith on the Andrews debt and mortgage on the Calvert street property; which notes being to the appellant and collected by him or for him, he must be regarded as understanding the arrangement, and to have acted in the

matter with respect to the extensions of time for payment, with the knowledge of the consequences flowing therefrom.

In 1 *Jones on Mortgages, secs.* 740–741, the doctrine is most clearly stated, that, generally one purchasing land subject to mortgage not only purchases the equity of redemption, but purchases the whole estate, and assumes the payment of the mortgage as part of the purchase money. Generally an express agreement is made to that effect, (as was done here,) and the deed drawn subject to the payment of the mortgage. In such case as between the parties, the purchaser becomes primarily liable for the debt and the mortgagor only security; "and as between them the mortgaged property becomes the primary fund for the payment of the debt." The same author says the mortgagee may by his dealings with the purchaser and mortgagor recognize the purchaser as principal and the mortgagor as only security towards himself. It is also stated, that "any material alteration of the mortgage contract will discharge the mortgagor." It is still further stated in sec. 742, thus: "A purchaser having assumed the payment of an existing mortgage and thereby become the principal debtor, and the mortgagor a surety of the debt merely, an extension of the time of payment of the mortgage by an agreement between the holder of it and the purchaser, without the concurrence of the mortgagor, discharges him from all liability upon it."

The doctrine as thus stated, comports, we think, with true principles of equity and fair dealing to which parties ought always to be held. The question was presented in *Calvo vs. Davis, et al.,* 73 *New York,* 215, and was unequivocally decided in accordance with the rule as we have extracted it from *Jones on Mortgages.* In that case the Court said, that in such a case as this we are considering, it must be held on the authorities that, the rights of parties must be determined by the rules governing the

relation of principal ánd surety. We find that decision
to have been frequently followed in New York, and have
discovered no case to the contrary in this country, except
*Corbett vs. Waterman*, 11 *Iowa*, 86. The weight of
authority is strongly in favor of the rule laid down in
*Calvo vs. Davis*, which we think adopts the truly equita-
ble rule. It is very clear that after this arrangement be-
tween the appellant and Meredith, if Andrews and wife,
who were the original debtors, had tendered the amount
of the mortgage debt to the appellant and demanded
an immediate assignment to them that they might
enforce immediate payment, Meredith could not have
complied, so as to enable them to proceed; nor could
*he* have proceeded at once upon the demand of the
appellees as the sureties of Meredith under the theory
of the law as stated, for he had bound himself to
wait for a definite period. It may be possible that
during that period such depreciation might take place
as to create the deficiency.

The appellant complains that no injury in fact has been
shown. The authority we have cited says that no inquiry
will be made into that. The reason is that the law pre-
sumes a man to have been injured by such dealing to his
possible, if not probable, prejudice. This is the doctrine
of *Claggett, et al. vs. Salmon*, 5 *G. & J.*, 352, in which
Judge STEPHEN says, "It is upon the principle, that the
contract is changed or varied to his prejudice, and with-
out his consent, that the surety is discharged. It is
because the creditor has disabled himself from fulfilling
the duties and obligations which he owes to the surety,
that he is released from his responsibility." In that case
there was an express reservation of rights as against the
surety, which under the circumstances of that case was
upheld. But in this case there was no reservation of
rights as against the surety, nor of right to proceed at the
sureties' request, to throw any doubt upon the propriety of

applying the general rule to this case. The doctrine that any dealing with the principal debtor whereby the contract is varied or changed, operates to release the surety, is also fully maintained and applied in *Mayhew vs. Boyd*, 5 *Md.*, 102; *Yates vs. Donaldson*, 5 *Md.*, 389, and *Oberndorff, Trustee vs. Union Bank of Baltimore*, 31 *Md.*, 126.

In respect to the appellant's exception to certain questions propounded to, and answers given by, R. S. Andrews, which exception is taken by barely referring to the number of the interrogatory, without assigning any ground for the exception, we will only say that in absence of any special designation of ground of objection, we have, upon examination, been able, in most of the questions and answers, to discover no reason for excluding the testimony; and such as may be exceptionable do not affect the decision we make. The objection to appellees' Exhibit, R. S. A., No. 5, is overruled. It was clearly admissible. Such relation was shown to exist between the appellant and Guest & Sons as principal and agent in respect to the matters of inquiry, as to lay the foundation for its admission.

It follows from what we have said, that the decree of the Circuit Court must be affirmed.

*Decree affirmed.*

(Decided 8th March, 1883.)