PHILIP ASBELL et al. *v.* MARSHALL BUILDING
& LOAN ASSOCIATION.
[No. 17, October Term, 1928.]

*Decided December 6th, 1928.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Sloan, JJ.

*James E. Tippett* and *Erwin I. Feldman,* for the appellants.

*Albert H. Blum,* with whom was *Harry O. Levin* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellants, Philip Asbell and Sarah Asbell, his wife, on the 27th day of September, 1923, executed a mortgage unto the appellee, the Marshall Building and Loan Association, upon sixteen houses in the City of Baltimore, to secure a loan of $19,200, made to them by said association.

The appellants, in the mortgage executed by them, covenanted with the appellee, the building and loan association, to pay to it so much each week upon the mortgage debt, and so much each week as interest and premium, and also covenanted to pay, when due and demandable, the ground rent, water rent and taxes, and all other public dues, charges, rents and assessments for which the mortgaged property or debt was liable. The mortgage also contained a provision that the entire mortgage debt was to mature in four years from the date of the mortgage, and whatever balance remained owing on said mortgage debt at that time became due and payable on demand.

Among the covenants found in the mortgage, is the following: "It is also covenanted and agreed by the said mortgagors that in the event of a sale or transfer of title of the said mortgaged premises, voluntary or involuntary, then, and in that event, the entire mortgage debt becomes due and payable."

At the time of the execution of the mortgage, the appellants paid to the association an entrance fee of $960, and at such time it was agreed between the parties that $4,800 of the loan should remain with the association as a deposit to the credit of the appellants, as evidenced by a pass book issued to them.

The mortgage also contained the consent of the mortgagors that a decree should be passed for the sale of the mortgaged property if default occurred in any of the covenants or conditions of the mortgage.

On the tenth day of October, 1923, the appellants conveyed the mortgaged premises to Lerner Brothers, who, in the deed to them, assumed the payment of the mortgage debt. Thereafter the association received, and credited on the ap-

pellant's account, checks of Lerner Brothers, "representing payments on account of dues, interest and expenses under the mortgage."

On May 15th, 1924, the mortgaged property was sold at public auction by Lerner Brothers to one Zetzer, and on the 18th day of August, 1924, the property so sold was, by deed of that date, conveyed by Lerner Brothers to Zetzer, subject to the mortgage resting thereon, and in that deed, which was placed on record February 13th, 1925, Zetzer assumed the payment of the mortgage debt, and thereafter made weekly payments to the association on account of said indebtedness.

After the sale of the property to Zetzer, the appellant, Philip Asbell, made demand upon the association for the payment to him of the $4,800 left with it as a deposit. The association refused to pay it and, on August 20th, 1925, the appellants brought suit in the Baltimore City Court against the association to recover the $4,800 so left with it. At or about the time of the institution of the suit in the Baltimore City Court, the appellants brought suit against the association in the Superior Court of Baltimore City to recover the $960 paid by them as an entrance fee.

The $4,800 was thereafter paid to Asbell upon a resolution passed by the directors of the association, at a meeting on November 26th, 1925, at which Asbell was present. The resolution was that "Mr. Asbell be paid the sum of $4,800 hypothecated by him as security for his loan on the property on Cleveland Street (the property here referred to) mortgaged by him, with the understanding, however, that the association does not waive any right against Mr. Asbell." And the suit, instituted to recover the same, was on November 27th, 1925, marked "Settled"; and on December 1st of the same year, the entry of "Agreed and settled, upon payment of the costs by the defendant" was made in the suit instituted in the Superior Court.

After the passage of the decree and the appointment of the trustee on the day mentioned, and while the proceedings were still pending, but before any sale was made of the mortgaged property, Zetzer and wife, with Benjamin L.

Freeny as surety, on the 16th day of November, 1925, executed and delivered to the association the following bond:

"Whereas by mortgage dated Sept. 26th, 1923, and recorded among the Land Records of Baltimore City in Liber S. C. L. No. 4081, folio 21, etc., one Philip Asbell and wife executed a mortgage to the Marshall Building and Loan Association on sixteen certain houses on Cleveland Street, in Baltimore City, to secure a loan of nineteen thousand two hundred ($19,200.00) dollars, advanced to them by said association, and

"Whereas said mortgage contains a clause constituting the same in default upon any change in ownership, unless consented to in writing by said mortgagee, notwithstanding which, one Jacob Zetzer has, since the execution of said mortgage, assumed title to said property subject to said mortgage, and that the said mortgagee has not consented to said change in ownership, but has begun proceedings to sell the said properties under said mortgage, and has served notice on the said Zetzer that unless the mortgage indebtedness is at once liquidated, the sale would proceed, and

"Whereas the undersigned have agreed with the said association to guarantee the payment of part of said mortgage indebtedness, to wit: three thousand ($3,-000.00) dollars, upon the condition that the association waive its right to foreclose said mortgage on account of default referred to.

"Now, Therefore, the condition of this obligation is such that if the amount due the association with interest is paid to them, this obligation shall be null and void, but in the event the said association shall sustain any loss if said properties are sold for an amount insufficient to liquidate the indebtedness, after deduction of proper costs and expenses, the undersigned covenants and agrees to indemnify them against any loss to the extent of three thousand ($3,000.00) dollars."

After the execution of the aforegoing bond, and after the institution of the foreclosure proceedings, Zetzer, on the 18th

day of January, 1926, before the sale was made by the trustee, sold and conveyed the mortgaged premises to one Herman Canter. In the deed to him, however, Canter did not assume the payment of the mortgage debt.

In the agreed statement of facts, found in the record, it is shown that to June 26th, 1924, the payments were made on account of the mortgage in accordance with its terms. Thereafter the payments were made with less regularity, and on the 13th day of February, 1925, the day upon which the deed from Lerner Brothers to Zetzer was recorded, there was owing upon the principal the sum of $165.16, but nothing on the interest. The delinquencies in making the payments thereafter increased, and on October 29th, 1925, less than one month before the above mentioned bond was executed, there was due and owing upon the principal $192.60, though at the time of the sale there was due and owing upon the principal more than $4,000 and interest from August 4th, 1927.

The sale made by the trustee on the 29th day of September, 1927, was finally ratified and confirmed on the following 7th day of November, and the audit thereafter stated was finally ratified and confirmed. It was shown by the audit that, after applying the proceeds of the sale to the payment of the mortgage debt and interest and the cost and expenses of the sale, there still remained due and owing to the association on the mortgage debt the sum of $9,048.35. Thereafter, upon the petition of the association, a decree *in personam* in favor of it against the appellants for the said sum of $9,048.35 was passed by the court, on November 28th, 1927. It is from that decree of the court that this appeal is taken.

It is conceded by the appellants that the effect of the sale and conveyance of the mortgaged property to Zetzer, subject to the mortgage indebtedness, which he assumed to pay, was to make him the principal debtor and the appellants sureties for the payment of such debt, but they contend that while this is true, they are released and discharged from all liability as sureties, because of the execution and acceptance, without their consent, of the aforegoing bond, executed on

the 16th day of November, 1925, which had the effect, as claimed by them, of extending the time of payment, or, if it did not have that effect, it amounted to a material change in the contract between the parties, prejudicial to the appellants.

It is the settled rule of law of this state, as contended by the appellants, that "Where a grantee covenants, or by apt terms assumes, to pay a mortgage debt charged on the granted premises, for the payment of which the grantor is bound, the relation of principal and surety arises; and an extension of the time of payment of the mortgage debt, by valid agreement, by the mortgagee, without the consent of the mortgagor or grantor, will release the grantor from personal liability." *Chilton v. Brooks,* 72 Md. 557; *George v. Andrews,* 60 Md. 26.

It is also true, as contended by the appellants, that if the contract is changed or varied to their prejudice and without their consent, the sureties are discharged, unless such change, resulting in an extension of time or a prejudicial injury to the mortgagors, is assented to by the mortgagors, or unless the rights of the mortgagee against them are expressly reserved. *Clagett v. Salmon,* 5 G. & J. 352; *George v. Andrews, supra.*

The reason upon which the rule as to the extension of time rests, is that the mortgagor, on paying the mortgage debt, has a right of subrogation. He, however, by such subrogation only acquires such rights as the creditor himself actually has. Therefore, where the creditor has extended the time at which the debt shall become due and demandable, the surety on paying it cannot sue the principal debtor until the time of such extension has expired, for not until then can the creditor sue the principal, because of his agreement with him extending the time of payment.

The surety, by the only contract to which he has given his consent, has the right to pay the mortgage debt and sue the principal debtor at any time after the debt under that contract matures by a breach of covenant or otherwise, and when he is deprived of this right by a contract made by the mortgagee with the principal debtor, extending the time of pay-

ment, without his consent, the law presumes from such fact an injury to the surety and releases him from liability. *George v. Andrews, supra; Chilton v. Brooks, supra.*

In *George v. Andrews, supra,* where the time for the payment of the mortgage debt was extended by a valid agreement made by the holder of the mortgage with the grantee of the mortgaged premises, without the consent of the mortgagors, first for the period of three years, and at the expiration of that time, for an additional period of one year, the court held that the sureties were discharged, because, "after this arrangement" between the holder of the mortgage and the principal debtor, Andrews and wife, the mortgagors, upon paying the mortgage debt and interest then due and owing under the original contract, could not enforce immediate payment against the principal debtor, but were compelled to wait the expiration of the time to which the payment of the debt had been extended. In that case the court said: "The appellant complains that no injury in fact has been shown. The authority we have cited says that no inquiry will be made into that. The reason is, that the law presumes a man to have been injured by such dealing, to his possible, if not probable, prejudice." *Claggett v. Salmon, supra.*

To exonerate a surety from liability, the agreement extending the time must be binding upon the creditor, and must be of such character that the creditor would thereby be estopped from enforcing payment of the debt before the expiration of the extended time. *Berman v. Elm Loan Association,* 114 Md. 194; *Obendorff v. Union Bank,* 31 Md. 131; *Hayes v. Wells,* 34 Md. 515; *Warner v. Williams,* 93 Md. 521; *American Iron Co. v. Beall,* 101 Md. 425.

In the light of the authorities cited, we are to consider the effect of the execution and acceptance of said bond upon the liability of the sureties in this case, and to determine whether there was an extension of time within the meaning of the rule, or a material variance or change caused thereby in the original contract, which released and discharged the sureties from liability.

The covenant in the mortgage in relation to the change in the ownership of the mortgaged property was made by the mortgagors, and was made, we think, chiefly, if not altogether, for the benefit of the mortgagee. The latter had made the loan to the mortgagors and had accepted them as its debtors, and to protect it against an undesirable purchaser of the property, who would thereby become its principal debtor, the right was reserved to it to collect the loan at once by a sale of the property. It was sold by the mortgagors to Lerner Brothers, purchasers of their own selection. The default resulting from this sale was waived. It is questionable whether said covenant remained in force thereafter, but as it was so treated by the parties as being in force at such time, we shall so treat it. The property was subsequently sold by Lerner Brothers to Zetzer, without the consent of the mortgagors or mortgagee, and this sale was treated by both mortgagee and mortgagors as constituting a default authorizing the sale of the property for the payment of the mortgage debt.

At the time of the execution and acceptance of the bond, the sale and transfer of the property had been made by Lerner Brothers to Zetzer. In addition thereto, a breach had occurred in the covenants to pay the weekly charges and payments when and as the same became due and payable, and foreclosure proceedings for the enforcement of the mortgage debt had been instituted on the 30th day of October, 1925. Thereafter, the mortgagee notified Zetzer, the owner of the property at that time, that unless he paid the mortgage debt at once the property would be sold. In response to this notice or demnad, negotiations were instituted between the mortgagee and Zetzer to avoid the sale of the property at that time under such proceedings, and on November 12th, 1925, the association passed the following resolution:

"Resolved, by the board that the association refrain from proceeding with foreclosure on properties on Cleveland Street, mortgaged by Mr. Asbell providing regular payments on account thereof are made, and

114

upon condition that Benjamin L. Freeny guarantees
the amount of three thousand dollars to the associa-
tion in the event of any loss."

It was pursuant to this resolution that the bond was exe-
cuted and accepted. Philip Blum, president of the associa-
tion was asked: "When you accepted that bond, was it not
with the idea that you would not proceed with the foreclo-
sure? A. That was true, the bond was accepted with the idea
of not foreclosing. Q. For how long a period were you to
refrain from taking any action, as a result of your associa-
tion's getting that bond? A. Well, there was no period stipu-
lated, so far as I know. Q. Asbell did not know anything
about this bond at the time the bond was made, did he? A.
No, sir. Q. Why didn't you tell Asbell? A. I did not tell
him. Q. When did you tell him? A. I didn't tell him any-
thing about the bond. Q. Why didn't you? A. Well, he
didn't ask me, I don't tell everybody what is going on in
the association. Q. Then this bond was a little private ar-
rangement between your association and the Zetzers, was it
not? A. That is about the size of it, to keep it from going
to sale."

The object, as well as the effect, of this bond, was to waive
the default thought to exist at such time because of the sale
of the mortgaged property by Larner Brothers to Zetzer, and
also to waive the default then existing resulting from the fail-
ure to meet the weekly payments and charges, when and as
the same had become due and payable, and Zetzer was there-
after to meet and pay said weekly dues and charges accord-
ing to the terms of the mortgage. After the execution and
acceptance of the bond, in which the then existing defaults
were waived, the mortgagee was thereafter prevented from
enforcing the payment of the mortgage debt until a default
thereafter occurred; so were the mortgagors during such time
prevented from enforcing it upon an assignment of the
mortgage to them, as their rights in respect thereto were
no greater than those of the mortgagee.

It was certainly not intended, after the execution and acceptance of the bond, that the mortgagee could at once proceed to sell the property under the mortgage. If so, Zetzer acquired no benefit from the execution of the bond. The bond had the effect of not only waiving the defaults, then existing, under which the property could then have been sold, but it postponed the right to sell until another default occurred, and it was because of this extension of time that the mortgagors were released and discharged from their liability as sureties.

Therefore, the decree in this case must be reversed.

*Decree reversed, with costs to the appellants.*