ELMER T. WRIGHT ET UX. *v.* JOHN A. WAGNER, JR., EXECUTOR

[No. 7, October Term, 1943.]

484

 

*Decided November. 3, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Alfred F. Walker* for the appellants.

*Eldridge Hood Young* for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is an appeal from a decree *in personam* entered against the appellants (mortgagors) on December 1, 1942, by the chancellor in Circuit Court No. 2 of Baltimore City. The decree was obtained at the suit of the mortgagee. John A. Wagner, who died after the institution of the foreclosure proceedings and was succeeded as plaintiff by his executor, John A. Wagner, Jr.

These proceedings are under the authority of Section 731A of Article 4 of the Public Local Laws of Maryland, 1930, Chapter 327 Acts of 1898. This statute, which is a local law for Baltimore City, provides for a decree *in personam* upon the motion of the "plaintiff, the mortgagee or his legal or equitable assignee, * * *

against the mortgagor or other party to the suit or proceeding, who is liable for the payment thereof, for the amount of such deficiency; provided, the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt so remaining unpaid and unsatisfied by the proceeds of such sale or sales."

The issue on the present appeal arises from the motion of the mortgagee, Wagner, for a decree *in personam* against his original mortgagors, Elmer T. Wright and wife, and the latters' answer thereto, followed by testimony in open court before the chancellor. The motion recites simply that there is a balance of $1,423.04 due the mortgagee on his claim against the mortgagors, Elmer T. Wright and wife, as determined by the court auditor's account. The said mortgagors answered this petition in due course, denying liability on the ground that about five years after they had executed the original mortgage to Wagner, they had sold their equity of redemption in the property and that said sale was, specifically, made subject to the aforesaid mortgage, as understood and agreed to by all parties concerned. Thereupon, the mortgagors allege, the mortgagee "dealt with and accepted the said purchaser, Nicholas Belsky, as an original mortgagor and did not further make demand upon, or communicate with, your respondents until some time in the month of April, 1940, when the complainant, through his counsel, notified your respondents of his intention to institute mortgage foreclosure proceedings." The answer concludes with the allegation that the action of the mortgagee in accepting the purchaser as the mortgagor "actually and legally released your respondents from liability under the covenants of the mortgage."

The facts of the case as disclosed by the record are substantially these:

In September, 1924, the appellants, Elmer T. Wright and wife, purchased from the late John A. Wagner the property in question, No. 1136 Hollins Street in the City

of Baltimore, and executed to him a purchase money mortgage in the sum of $7,000, with the usual covenants. The mortgage debt was made payable through amortization for the first four years and the balance five years after date, with interest at 6 per cent., payable semi-annually.

In April, 1929, the mortgagors entered into a contract with one Nicholas E. Belsky for the sale of this property, but before consummating the sale Wright took Belsky to see Wagner, the mortgagee, about it. Wright testified, without objection, that they entered into an agreement as to continuing the mortgage, first orally and then in writing, but was properly not allowed to testify as to what that oral agreement was in view of the death of the mortgagee. Art. 35, Sec. 3, Code P. G. L., 1939. The written agreement was identified as a letter signed, under seal, by John A. Wagner and addressed to "Mr. Nicholas E. Belsky and wife, 1136 Hollins Street, City," and was admitted as an exhibit in the case. This letter was written under the letterhead of "William Lovitt, Attorney at Law," who is mentioned in the record as the attorney for Belsky. It was dated April 22, 1929, and the deed from the Wrights to Belsky and his purchase-money mortgage back to them are both dated the following day.

This Belsky-Wright mortgage recites that it is to secure a balance of $2,500 on the purchase price, payable $500 per year with interest. It also recites, specifically, that "it is understood that this mortgage is junior to the first mortgage of the aforesaid fee simple property held by one John A. Wagner dated September 4th, 1924, and recorded Land Records Baltimore City in Liber S. C. L. 4256, folio 537, on which said first mortgage there is now due a balance of $5,000.00 on the principal. Elmer T. Wright, Emma T. Wright, his wife, mortgagees under this second mortgage, do hereby give their consent and authorization that at any time any other first mortgage for $5,000.00 may be placed on said fee simple property in lieu of the existing first

mortgage thereon in the event of a new mortgage of $5,000.00 be placed on said property, the said new mortgage shall have preference and priority and be a superior lien to this second mortgage."

After the sale of this property by the Wrights to Belsky, the record shows that there was never any demand made upon the Wrights for the payment of either the principal or interest of the mortgage until some time in the month of April, 1940, when the mortgagee, through his counsel, notified the Wrights of his intention to institute mortgage foreclosure proceedings. On this point the record further shows that during this entire period from 1929 to 1940, "Mr. Wright dealt daily with Mr. Wagner and that during that period there was no mention made of this mortgage or any demand or any request, or any indication of any kind." This fact was established by admission while the appellee was on the witness stand. It was also brought out through that witness that his father, the late John A. Wagner, had signed the letter of April 22, 1929, taking direct cognizance of the sale of this property to Belsky. As this letter has a controlling bearing upon the decision of this case, it is here quoted in full:

"William Lovitt
Attorney at Law
20 E. Lexington Street
Baltimore, Md.

"April 22, 1929.

"Mr. Nicholas E. Belsky and wife,
"1136 Hollins Street, City.

"Dear Sir and Madam:

"In connection with the mortgage which I hold on 1136 Hollins Street on which there is now due balance of $5,000.00 on the principal, I wish to say that you may renew this mortgage for an additional period of three years from September 4th 1929 to September 4th 1932. You will be required to pay off annually at least $300.00 on the principal. The interest will be at 6%

per annum, payable semi-annually. There will be no fees or charges to you whatsoever in connection with my furnishing you with the above mortgage. The interest on the existing mortgage is paid up to April 9, 1929.

"Very truly yours,
"John A. Wagner (Seal.)"

The record further shows that subsequent to the aforementioned letter from the mortgagee, Wagner, and the consummation of the sale from the Wrights to Belsky, all payments that were made on account of the mortgage throughout a period of approximately eleven years were made by Belsky, and no mention was ever made to the Wrights of the subject of the mortgage. These payments by Belsky included principal, as well as interest, but just how much was paid by him altogether to the mortgagee is not disclosed by the record. When Belsky was asked by the court why he didn't pay the balance due, his answer was: "I can't pay it. They foreclosed and I was taken sick and was in the hospital for nine weeks, and when I came back, the property was gone." The first mention to the Wrights after they sold this property to Belsky in 1929 as to any claim against them by the mortgagee was when they received the formal notice from counsel in April, 1940.

Just how many extensions, if any, had been granted Belsky by Wagner for paying this mortgage indebtedness, following the first extension granted in Wagner's letter of April 22, 1929, is likewise undisclosed by the records. Two outstanding facts are that all dealings concerning the mortgage from April, 1929, to April, 1940, were between Wagner and Belsky, exclusively, and that the first extension under the letter of April 22, 1929, expired September 4, 1932. There is no telling from the record just how much was due at the end of that three-year period, or what the status of the mortgage debt was at any stage of these transactions since 1929, up to, and including, the foreclosure proceedings

in 1940. Even at that time there is nothing in the record to show the amount due on the mortgage. All that is shown is a balance of $1,423.04 remaining due and unsatisfied under the mortgage claim, after ratification of the auditor's account, and to recover which this present action was undertaken against the original mortgagors.

The defense to it is based on the ground, as stated in the answer, that the action of the mortgagee in "accepting" the purchaser "as the mortgagor, actually and legally released" the appellants from liability under the covenants of the mortgage.

However, by the language of the statute under which these proceedings for a decree *in personam* were authorized, the only persons against whom a deficiency judgment could be obtained are the mortgagors, as they are the only parties who could be sued at law on the covenants to pay the mortgage debt, this being the test prescribed by said statute. *County Trust Co. v. Harrington,* 168 Md. 101, 104, 176 A. 639; *Scherr v. Preston Permanent Building Ass'n,* 166 Md. 106, 770 A. 197.

It is well settled in Maryland that the mere purchase of property subject to an existing mortgage does not create a personal obligation on the part of the purchaser to pay it, unless its payment was assumed as a part of the purchase price of the property, and that whether the purchaser assumed payment of a mortgage was a matter of agreement which might be express or implied, written or in parol, and even separate from the deed. *East End Loan & Savings Ass'n v. Berman,* 170 Md. 536, 541, 185 A. 332; *Rosenthal v. Heft,* 155 Md. 410, 419, 142 A. 598; *Chilton v. Brooks,* 72 Md. 554, 557, 20 A. 125; 41 *C. J., Mortgages,* Secs. 745, 757, 763, 766, 769, 770.

In the case at bar there is every indication from the facts of record that the purchaser, Belsky, not only took the property subject to the Wagner mortgage, but also that he assumed the amount thereof ($5,000) as a part of the purchase price. In fact, his purchase-money

mortgage to the Wrights so states. By virtue of this transaction it became his duty to pay the mortgage debt and to protect his vendors against any demands that might be made against them for the debt which the mortgage secured. *Rosenthal v. Heft, supra; East End Loan & Savings Ass'n v. Berman, supra;* 30 *Cyc., Mortgages,* 1632.

However, this did not operate as a release of the original mortgagors, Wright and wife, from the covenants under their mortgage to Wagner. There was the relationship of principal and surety between them and their grantee, Belsky, but as to the mortgagee, Wagner, the only liability under the covenants of the mortgage was upon the Wrights. *Chilton v. Brooks, supra; Asbell v. Marshall Building & Loan Ass'n,* 156 Md. 106, 111, 143 A. 715; *George v. Andrews,* 60 Md. 26, 45 Am. Rep. 706. Whether, as between them and Belsky, one is principal and the other surety can make no difference in determining the issue in this proceeding as to their liability to a decree *in personam.*

It is clear, therefore, that the mortgagee, Wagner, is entitled to a decree *in personam* against the original mortgagors, Wright and wife, unless the facts and circumstances of the case establish a novation, as claimed by the appellants under the authority of *Chatterley v. Safe Deposit & Trust Co.,* 168 Md. 656, 658, 178 A. 854, or are sufficient to invoke the doctrine of equitable estoppel or waiver against the mortgagee.

In the view we take of this case it is not necessary to pass upon the question of novation, as the decision here rests squarely upon the principles of equitable estoppel and waiver. These principles are closely inter-related and the facts of this particular case strongly support both.

As stated by this court in *Benson v. Borden,* 174 Md. 202, 219, 198 A. 419, 427: "In this country 'waiver' and 'estoppel' are often used synonymously * * *, particularly in insurance law * * *, although the terms have separate and distinct functions, and the same set of

facts may establish one but not the other." In that case the court quotes with approval the definition of waiver as given in *Crosswell v. Connecticut Indemnity Ass'n,* 51 S. C. 469, 29 S. E. 236, 239: "(Waiver is) the relinquishing, giving up, or surrendering of some known legal right, (and) may be found to exist if one 'acts in such a way * * * that his conduct implies that he has waived his right,' and * * * 'amount(s) to a bar or obstruction when once established,' and * * * 'might be said to be estoppel'."

The line of demarcation between waiver and estoppel is thus set out in 40th *Cyc., Waiver,* 255: "While waiver belongs to the family of estoppel and the doctrine of estoppel lies at the foundation of the law of waiver, they are neverthless distinguishable terms. * * * Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; estoppel depends, rather, upon what he causes his ad-Waiver depends upon what one himself intends to do; estoppel depends, rathert, upon what he causes his adversary to do. Waiver involves acts and conduct of only one of the parties; estoppel involves the conduct of both."

"Where the waiver relied on is constructive, or merely implied from the conduct of a party, irrespective of what his actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel." 31 *C. J. S., Estoppel,* Sec. 61. It is well settled that, at any rate, the same conduct may constitute both an implied waiver and an estoppel, and there may be an estoppel by waiver (*Benson v. Borden, supra*), it being also well settled that where a party to a transaction induces another to act on the reasonable belief that he has waived, or will waive, certain rights or remedies which he is entitled to assert, he will be estopped to insist on such rights or remedies to the prejudice of the one mislead. 31 *C. J. S., Estoppel,* Sec. 61; *Big Vein Pocahontas Co. v. Browning,* 127 Va. 34, 120 S. E. 247, 256.

An equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to do so. *Rody v. Doyle,* 181 Md. 195, 29 A. 2d 290; *Horn v. Cole,* 51 N. H. 287, 12 Am. Rep. 111; *Parks & Hull Appliance Corp. v. Reimsnyder,* 177 Md. 280, 9 A. 2d 648.

Whether or not the doctrine applies depends upon the facts and circumstances of each case. *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725; *Rodgers v. John,* 131 Md. 455, 102 A. 549. The case at bar is clearly one of those to which it does apply, fortified by evidence of a constructive waiver. The essential facts of the case all lead to this conclusion. Specifically, when the renewal period prescribed in the Wagner-Belsky letter of April 22, 1929, expired on September 4, 1932, nothing was said to the Wrights, either directly or indirectly, but Wagner either granted other extensions to Belsky or simply refrained from foreclosing, all without the Wrights knowledge and without their being informed at any stage of the transaction after April, 1929, as to the amounts paid by Belsky to Wagner in reduction of the mortgage debt, on which he had admittedly been making payments as to both principal and interest during the intervening period of eleven years.

This course of dealing between the parties in relation to the mortgage debt in question fully justified the Wrights in the belief that Wagner had ceased to look to them as his obligors subsequent to his letter of April, 1929, and their failure to take any steps to protect themselves against default by Belsky in continuing payments which he had undertaken to make Wagner, can, in fairness, be attributed only to Wagner's conduct and attitude in the matter.

This amounted to both a relinquishment of his right to proceed against them under the covenants of the original mortgage, thus constituting a waiver as above defined, and of equitable estoppel to assert that right.

To permit the mortgagee to repudiate the reasonable understanding which his course of dealings created would, in the language of this court in the Berman case, *supra,* result in an injustice to the appellants which will not be countenanced in equity.

This conclusion is further strengthened by the application to a state of facts such as exists here of the principle expressed in the leading case of *Chilton v. Brooks, supra,* and supporting authorities, that the extension by a mortgagee to a grantee of the original mortgagor of the time and terms for paying the debt, without the knowledge or acquiescence of the latter, operates as a release of the original mortgagor from his obligation under said mortgage, especially when, as in the case before us, he has been unquestionably prejudiced by said action. *Chilton v. Brooks, supra; Keller v. Ashford,* 133 U. S. 610, 33 L. Ed. 667; *Chatterley v. Safe Deposit & Trust Co., supra; Jones on Mortgages,* 8th Ed., Vol. 2, Sec. 924.

*Decree reversed, with costs to appellants.*