PYLES, Trustee u/w of W. Eugene Pyles *v.* CALLIS et ux.

[No. 8, September Term, 1973.]

*Decided October 4, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*George E. Meng,* with whom were *Eugene E. Pitrof* and *Pitrof & Starkey* on the brief, for appellant.

*John C. Joyce,* with whom were *William W. Beckett* and *Duckett, Orem, Christie & Beckett* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The principal question in this appeal is whether the Circuit Court for Prince George's County, in Equity (Meloy, J.), erred in its decree of November 21, 1972 in providing that the sum of $2,998.25, awarded by a jury to the appellant, Harvey E. Pyles, Sr., Trustee under the will of W.

Eugene Pyles, in a separate condemnation case against the appellant and the appellees, Charles R. Callis and wife, should be deducted from the principal balance due under the terms of the contract, dated June 13, 1946, for the sale of the subject property; *i.e.*, Lot No. 30, Block 2 on the east side of St. Barnabas Road, Prince George's County containing 15,246 square feet of land, more or less. We have concluded that the chancellor ruled correctly and we will affirm the decree.

This rather curious case was before us in 1964 in *Pierson v. Pyles*, 234 Md. 119, 197 A. 2d 890. In that appeal, the same contract of sale was involved, providing in relevant part:

"The total purchase price of the aforesaid property is Fifteen Thousand ($15,000.00) Dollars, of which sum the above deposit of Sixty-five ($65.00) Dollars is to be a part; the purchasers covenant and agree to pay the balance of the purchase price, amounting to Fourteen Thousand Nine Hundred Thirty-five ($14,935.00) Dollars at the rate of Sixty-five ($65.00) Dollars per month, including interest on the unpaid balance amounting to four per centum (4%) per annum, without the privilege of anticipating said monthly payments, which monthly payments are also to include all taxes and fire insurance which the sellers are hereby authorized and directed to pay from the aforesaid monthly payments of $65.00.

"When the purchasers have paid the sum of Five Thousand ($5,000.00) Dollars on account of the principal sum due hereunder, then, and in that event, the sellers agree to execute a deed covering the aforesaid property and to take back a purchase money mortgage for the unpaid balance, amounting to Nine Thousand Nine Hundred Thirty-five ($9,935.00) Dollars, at the cost of the purchasers, said mortgage to be payable on the same terms and conditions provided for above."

The chancellor in the prior case (Parker, J.) decreed that the

contract purchasers did not have the right to require the seller or his successors in interest to accept a greater amount in the monthly $65.00 payments, but did permit the purchasers to pay the taxes and insurance premiums over and above the monthly payments. We affirmed the decree in that case.

W. Eugene Pyles, the seller, died testate on June 18, 1959 and the appellant in this present appeal was appointed as Trustee under his will.

The Piersons — the original contract purchasers — assigned their rights in the contract of June 13, 1946 to the Callises, appellees, on June 30, 1963. The monthly payments of $65.00 and the taxes and insurance premiums in addition were duly paid or tendered by the contract purchasers and their assignees.

On December 19, 1967, the State Roads Commission of Maryland filed an eminent domain proceeding to condemn for highway purposes approximately 24% of the subject property along St. Barnabas Road, joining Pyles and the Callises as parties defendant. On June 12, 1969, a jury in the condemnation case established the fair market value of the parcel taken as $11,875.00 and in its inquisition awarded $2,968.75 to Pyles, as the owner of the fee simple interest in the property taken and $8,906.25 to the Callises as contract purchasers.

Pyles refused to accept payment from the Clerk of the Circuit Court for Prince George's County of the $2,968.75 deposited for the taking of his interest in the subject property, with interest of $29.50, a total of $2,998.25.

After further proceedings in the Circuit Court in regard to the acceptance by Pyles of the amount awarded to him in the condemnation case, with interest, Pyles finally accepted the $2,998.25. In the deposition of counsel for Pyles, it appears that Pyles was advised by his counsel that he must accept the award to him, which was 25% of the entire award of $11,875.00. It further appears that counsel, upon instruction of Pyles, took no part in the trial of the condemnation case. The fee arrangement was that Pyles would pay his counsel

one-third of any amount received by Pyles, which amounted to $999.42.

Thereafter, Pyles applied the amount received to payment of the balance due under the contract of sale, sending the Callises a receipt showing the following:

"June 20, 1970                                                                    $65.00
Paid by Charles R. Callis

| | | |
|---|---|---|
| Amount of Contract | | $14,077.02 |
| By Check from Clerk of Court | | 2,998.25 |
| | | $11,078.77 |
| Attorney Fee — Pitrof | | 999.42 |
| | | $12,078.19 |
| Payment 6/20/70 | $65.00 | |
| Interest to 6/18 | 40.26 | 24.74 |
| | | $12,053.45" |

Several subsequent receipts indicated balances due giving effect to the deduction from the principal of the debt of the $2,998.25 deduction.

The Callises filed their original bill of complaint on November 23, 1971 and, with the chancellor's permission, an amended bill of complaint on July 20, 1972. The amended bill recited most of the facts already mentioned and prayed that (1) an injunction issue requiring Pyles to accept all past and future payments of real estate taxes and insurance premiums made to him by the Callises and credit these payments on the balance due over and above the $65.00 monthly payments as required by the opinion in *Pierson v. Pyles, supra;* (2) an auditor be appointed to determine the balance due under the contract of sale; (3) Pyles be ordered to deduct from the balance due under the contract the counsel fee paid to Pyles' counsel; (4) and (5) together, the Callises be credited the amount of the award to Pyles on various dates; (6) the court declare that Pyles' signature was not required for the rezoning application previously filed by

the Callises, or in the alternative, require Pyles to sign or appoint a Trustee to do this and to enjoin Pyles from interfering with or obstructing the rezoning procedure; (7) the court declare null and void the covenant in the contract restricting the use of the property for "residential purposes only"; (8) the court declare that the Callises have the right to raze the existing buildings without committing waste if the rezoning is granted; (9) the court appoint a Trustee to carry out any directions of the court if Pyles declines to comply with such directions; and (10) the plaintiffs have other relief.

Pyles filed an answer admitting most of the facts alleged, denying others and praying that the amended bill be dismissed.

The chancellor disallowed the addition of $999.42, the fee of Pyles' counsel in the condemnation case, to the balance to be paid by the Callises and so ordered in the decree of November 21, 1972. This portion of the decree was not challenged by the appellant in his brief or at the argument before us. Accordingly, it is not necessary for us to consider the correctness of the ruling, *Ricker v. Abrams,* 263 Md. 509, 283 A. 2d 583 (1971); *Eggert v. Montgomery County Council,* 263 Md. 243, 282 A. 2d 474 (1971). In that decree, pursuant to an agreement of counsel, other issues in the suit relating to zoning, a residential covenant and the razing of improvements on the property were not decided by the lower court but were reserved for decision until the final determination of any appeal from the decree of November 21, 1972.

The chancellor in his oral opinion given at the end of the case, stated:

"The Court is of the opinion that when the proceeds of the award were credited by the trustee to the entire principal due, by notation dated the 20th of June, 1970, that an election was then made by the vendor to apply the proceeds in that manner; that it is equitable under the circumstances and facts of this case to have the proceeds inuring to the

benefit of the trustee by reason of the inquisition and condemnation to be applied as they were; that in effect the trustee made a voluntary surrender of a right involving both knowledge and intention. It was an act and conduct of Mr. Pyles, the trustee, alone, and that a waiver does not necessarily imply that one has been misled to his prejudice or into an altered position. A waiver may be created by the facts and conduct or declarations insufficient to create a technical estoppel. I am not going as far as to say that there is an estoppel in this matter, but it's certainly close in the Court's opinion."

The chancellor also pointed out that in view of the fact that approximately 24% of the subject property had been taken with a fair market value of $11,875.00, the remaining property would have a value on that basis of between $33,000.00 and $34,000.00, so that the security of the seller under the contract was not impaired by the taking.

As we have indicated, the chancellor concluded that, assuming for the argument that Pyles had the right not to apply the $2,998.25 to the purchase price in the contract of sale or the right to apply it in a different manner from the way he did apply it, Pyles waived any such rights by making the application of that payment in the way already described. He did not find it necessary to determine that Pyles was estopped to assert his position because of this voluntary application of the $2,998.25, although he indicated that it was a close question.

Judge Prescott, for the Court, in *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 531, 200 A. 2d 166, 172 (1964), defined "waiver" as follows:

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. Gould v. Transamerican Associates, 224 Md. 285, 167 A. 2d 905."

This definition is in accord with our prior cases. *See Gould v. Transamerican Associates,* 224 Md. 285, 167 A. 2d 905 (1961); *Frederick Motor Sales v. B. & O. R. Co.,* 202 Md. 491, 97 A. 2d 326 (1953); *Wright v. Wagner,* 182 Md. 483, 34 A. 2d 441 (1943), and *Benson v. Borden,* 174 Md. 202, 198 A. 419 (1938). Our predecessors, in *Benson,* articulated the meaning and application of the doctrines of "waiver" and "estoppel" as follows:

"In this country 'waiver' and 'estoppel' are often used synonymously by courts and text writers, particularly in insurance law (*Vance on Insurance,* p. 343; *Ewart's Waiver Distributed,* p. 8), although the terms have separate and distinct functions, and the same set of facts may establish one but not the other. The confusion arising from the misapplication of these terms, and their relation to 'election,' 'release' and 'contract,' is described in an exhaustive collation and analysis of authorities and reported cases in *Ewart's Waiver Distributed;* and the demarcation between 'waiver' and 'estoppel' is lucidly delineated in 40 *Cyc.* 255, as follows: 'While waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver, they are nevertheless distinguishable terms. * * * Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; estoppel may arise where there is no intent to mislead. Waiver depends upon what one himself intends to do; estoppel depends rather upon what he causes his adversary to do. Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position; an estoppel always involves this element. * * * Estoppel may carry the implication of fraud, waiver does not. A waiver may be created by acts,

conduct or declarations insufficient to create a technical estoppel.' " (174 Md. at 219, 198 A. at 427)

*See also* the helpful discussion of "waiver" and "estoppel" by Professor Corbin in *Corbin on Contracts* (1960), §§ 752, 753 and 754, pages 478-496.

As we have already observed, Pyles voluntarily elected to apply the condemnation award of $2,998.25 to the principal balance due under the contract of sale of June 13, 1946. Pyles prepared and sent to the Callises, receipts which clearly evidenced his election to so apply the amount of the award. In our opinion this conduct established a waiver by Pyles of any supposed "rights" to make no such application or to make a different type of application of the $2,998.25.

The auditor found that the balance due under the contract of sale was $10,071.01 through November 1972. Pyles is obligated to accept the $65.00 monthly payments· when tendered, in regular course and when the amount of $5,000.00 is paid giving effect to the $2,998.25 payment on account of the principal of the debt as ordered by the chancellor and effectuated by the auditor in his account showing the balance due of $10,071.01, the Callises are entitled to a deed from Pyles, Trustee for the subject property, if the decision of the chancellor on the questions reserved for subsequent adjudication would not change that result.

It should be pointed out that our decision in the present case does not modify our decision in *Pierson v. Pyles, supra.* *Pierson* did not consider any problems arising from any taking of part of the subject property by eminent domain — the taking being subsequent to the *Pierson* decision. As indicated the payments under the contract itself are governed by the *Pierson* case, which we approve.

The Callises argue with some force that the chancellor's decision is consistent with the decision of the Supreme Court of Michigan in *State Highway Commission v. Gibson,* 308 Mich. 276, 13 N.W.2d 617 (1944) as well as a later Michigan case, *Ziegler v. Newstead,* 337 Mich. 233, 59 N.W.2d 269 (1953) citing *Gibson* with approval and following it. It was

held in *Gibson* that even though a seller of land may be entitled to receive a condemnation award, the contract purchaser has the right to have the amount of that award applied for the reduction of the balance due under the contract of sale. *Gibson* is similar in its facts to the instant case. In *Gibson*, there were five vendees under land installment contracts. Four of the vendees had defaulted in their payments so that their contracts were forfeited and judgments of possession given in favor of the vendor prior to the condemnation awards. With regard to a fifth vendee named Speed, however, his contract of sale had not been forfeited at the time of the condemnation award. The Supreme Court of Michigan stated in regard to Speed:

"The trial court held that the vendors are entitled to the entire amount of the awards subject to the right of the vendee to have the amount of the awards applied upon the balance due on the contracts as of the time of the payment of the awards. The trial court comes to a correct conclusion. It was an equitable result. If the vendee elects to continue making his payments on the contract, he has not been harmed as he will be given credit for the amount of the awards, or if a judgment for possession is given to the vendors, then the vendors will be compensated for their loss of security." (308 Mich. at 283, 13 N.W.2d at 619)

Although there is much to be said for this rule, both conceptually and practically, it appears to be a "minority" rule. In 27 Am. Jur. 2d *Eminent Domain* § 248 at 19 (1966), it is stated:

"Since in equity a vendee in possession of land under a contract of purchase is regarded as the owner, the dominant view is that if the land is taken for public use under the power of eminent domain, he, and not the vendor, is entitled to the award. It has been held, however, that the vendor is

> entitled to the entire amount of the award subject
> to the right of the vendee to have the amount of the
> award applied upon the balance due on the
> contract."

The leading case supporting the "majority" rule is *Bailey v. Osborn*, 80 N.J.L. 333, 78 A. 9 (1910) and this rule has been recognized in *Re Application of Easement for Highway Purposes*, 118 Ohio App. 207, 25 Ohio Ops. 2d 57, 193 N.E.2d 702 (1963); *Arko Enterprises, Inc. v. Wood*, 185 So. 2d 734 (Fla. App. 1966) as well as other cases. For a helpful review of the cases on the general subject, see the Annotation in 27 A.L.R.3rd 572-619, entitled *Rights and Liabilities of Parties to Executory Contract for Sale of Land Taken by Eminent Domain.*

In the present case, we do not find it necessary to decide which of the two legal theories this Court will follow, inasmuch as even if it be assumed, *arguendo*, that the "majority" rule were applicable, Pyles has waived any rights under that rule for the reasons already stated.

Pyles relies upon *Arko Enterprises, Inc. v. Wood, supra,* as providing the "proper equitable solution" in the present case, apparently contending that the Callises were entitled to the whole award as contract purchasers and as holders of the equitable title to the subject property. Even if the "majority" rule were assumed to be applicable, this reliance is misplaced. In *Arko*, the property was taken by the condemning authority *in its entirety* — thus, as the Florida court held, making it totally impossible to perform the contract. Both the seller and the contract purchaser in *Arko* claimed the entire amount of the condemnation award. In the present case approximately 24% of the subject property was condemned and the issue is how the award to the seller was applied and not who should receive the award. The seller's security in *Arko* was completely removed; in the instant case the chancellor properly found that Pyles had more than adequate security for the payment of the balance due under the contract of sale after giving effect to the

deduction of the amount of land taken by eminent domain from the subject property.

> *Decree of November 21, 1972 affirmed and case remanded to the lower court for further proceedings conformable to this opinion and including a determination of the issues reserved for determination if desired by either of the parties, the costs to be paid by the appellant.*