# EMMA J. BOYLE *v.* MARYLAND STATE FAIR, INC.

*Equity Jurisdiction—Mistake and Fraud—Evidence—Deed—Recital of Consideration—Suit By Grantor—Laches.*

There is not a case of mutual mistake, as regards a deed executed by plaintiff, where her mistake arose from her ignorance that the deed would affect her remainder interest in the land conveyed, and the grantee's mistake arose from his ignorance that the grantor had a remainder interest.        pp. 339, 340

A court of equity may give relief where there is a mistake by one party, accompanied by fraud or other inequitable conduct on the part of the other party, even though the mistake is one of law.        p. 340

The facts constituting a fraud must be set forth with certainty and particularity.        p. 341

As a general rule, where a person, making an untrue statement of fact, honestly believes at the time that it is true, upon reasonable grounds which actually exist, the misrepresentation is not fraudulent either in equity or at law.        p. 341

A purchaser of land is under no duty to advise the vendor of his rights, but may assume that the latter knows what title he has, and understands the effect of the deed which he signs.        pp. 341, 342

The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position.                              p. 343

In the absence of inequitable circumstances, a recital of consideration is conclusive between the immediate parties so far as title is concerned, and where a consideration is actually paid, the fact that some of the grantors did not get their proper share of it will not affect the grantee's title.              pp. 343, 344

The setting aside or reforming of a solemn fee simple deed, containing covenants of special warranty and further assurance, requires clear and positive allegations of fraud or mistake, particularly where the application of the party ·claiming to have been misled was not made until fourteen years after the deed was executed, and not until eight years after she admittedly knew of her rights and realized her alleged mistake.        p. 344

In most equity cases considerable discretion is allowed the chancellor, whose duty it is to weigh the conflicting equities of any cause, and to decide, where possible, in favor of the party having the better equity.                             p. 345

Where the bill did not allege actual fraud, and it showed that plaintiff had executed a fee simple deed containing a special warranty and a covenant of further assurance, that the purchaser paid a fair price for the title obtained, that by *mesne* conveyances defendant, for an alleged valuable consideration, had secured title and possession, that it had held this title fourteen years, in the meanwhile paying all public charges against it, that plaintiff had slept ·on her rights for the past eight years, and that, though claiming an interest in the property, she made no offer to place defendant in *statu quo,* and the bill did not apparently negative the inference, arising from a deed filed as an exhibit, that defendant was a *bona fide* purchaser for value, *held* that the bill was demurrable, as not showing that plaintiff's equitable claim, by reason of her mistake in executing the deed in ignorance of her rights as remainderman, was superior to the equities which it showed in defendant.        p. 346

*Decided April 7th, 1926.*

Md.]

Appeal from the Circuit Court for Anne Arundel County, In Equity (PARKE, C. J.).

Bill by Emma J. Boyle against the Maryland State Fair, Incorporated. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, and WALSH, JJ.

*Washington Bowie, Jr.,* with whom was *Stephen W. Gambrill* on the brief, for the appellant.

*C. Alexander Fairbank, Jr.,* and *Frank B. Ober,* with whom were *Janney, Ober, Slingluff & Williams* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

The bill of complaint in this case, which was filed by the appellant, asked the court to require the defendant to surrender to the plaintiff an undivided one-fourth interest in certain land, to account and pay over to the plaintiff the income and profits received by the defendant from said interest since 1917, and for other relief. The bill alleges that on July 14th, 1888, Adolph and Louisa Schmidt, being seised as tenants by the entireties of a tract of land of about one hundred and eighteen acres, in Anne Arundel County, conveyed the same to Louisa Schmidt in trust for herself for life, and after her death and upon condition of the payment of certain debts upon the land, the remainder was conveyed to their seven children, one of whom was the plaintiff, and there was also a further trust that the said Louisa could, at any time during her lifetime, upon the payment by any one of the children of their respective part of the debt, convey to such child its share. The bill also alleges that in 1895 a survey of the land was made, and after the one hundred and eighteen acres was divided among the children "in accordance with the said deed of trust and an agreement be-

tween said children" a parcel of about four and one-half acres
of land at the western extremity of the whole tract remained
undisposed of. That as a result of said agreement and par-
tition three of the children were divested of any interest in
this four and one-half acres, so that the title to it remained
in Louisa Schmidt for life, with remainder over to the other
three children and the plaintiff. That on October 20, 1902,
Louisa executed a deed conveying said four and one-half acres
(hereinafter called the track) to the plaintiff in trust for
the plaintiff until her daughter Irene (who later intermar-
ried with one Studds), became eighteen years of age, then
in trust for Irene until she became twenty-one, and thereupon
the tract was to be conveyed to the said Irene in fee-simple,
provided that if Irene died before reaching twenty-one the
property was to vest in the plaintiff in fee-simple. That
after Irene became twenty-one, the plaintiff, through inad-
vertence, did not convey the property to her, though she was
ready and willing to do so; that some time prior to May
29, 1911, one Hopkins, president of the Laurel Four County
Fair, Inc., "the corporate predecessor in interest and title
to the defendant, herein acting for and on behalf of his cor-
poration," negotiated with Irene for the purchase of said
tract, that the plaintiff knew nothing of the details of these
negotiations "until after they were concluded," and that
these negotiations resulted in Irene selling her interest in
the tract to Hopkins. That the officers of the Laurel Four
County Fair, Inc., thereupon advised the plaintiff that in
order to vest in Irene the title and estate given to her under
the trust deed of 1902, it was necessary for the plaintiff to
sign the deed conveying the tract from Irene to Hopkins not
only as trustee, but also individually, because, under the deed
of trust, the plaintiff would acquire a beneficial interest in the
property if Irene died before becoming twenty-one, and
hence the plaintiff's joinder in the deed individually was
needed to prevent any future claim that said Irene had died
before attaining the age of twenty-one. It was further al-
leged that the plaintiff was unskilled in conveyancing, that

she executed the deed relying upon the foregoing representa-
tions of the officers of the Laurel Four County Fair, Inc., and
that at the time she executed the deed she believed that
Louisa Schmidt, the life tenant, had full power over the
property during her lifetime, and that she did not know that
she, as remainderman, had any rights during her mother's
lifetime, nor that she could execute a conveyance affecting
her interest and remainder under the deed of trust of 1888.
That the negotiations of Hopkins were with Irene and not
with plaintiff up to the time she was requested to join in
the deed; that no one paid or offered to pay the plaintiff
any consideration; that her motive in signing the deed was
to clear the title and that the officers of the defendant ad-
vised her that her signature was necessary to accomplish
that; and that the plaintiff does not know whether the agents
with whom she dealt knew of her interest and remainder
under the deed of 1888, but if they did, then they were
guilty of fraud, and if they did not intend to acquire said
interest, then it would be unjust to permit them to retain
said interest under the deed of 1911. The bill then asked
the court to decree that the defendant's right under the deed
of 1911 ceased upon the death of Louisa Schmidt in 1917,
and that the defendant be required to surrender possession of
the said land to plaintiff and to account for the *mesne*
profits. Later on the bill of complaint was amended by
filing as exhibits copies of the deed showing the chain of
title to the land in question from its transfer to Adolph and
Louisa Schmidt by Henry and Elizabeth Hartman in 1884,
down to its acquisition by the defendant from the Laurel
Four County Fair, Inc., in August, 1911. This chain of
title shows the original transfer above mentioned, then the
trust deed from Adolph and Louisa Schmidt to the latter
in 1888, then the trust deed of 1902 from Louisa Schmidt
to the plaintiff in which Louisa undertook to convey the fee-
simple title to the four and one-half acres involved in this
case, then the deed of 1911 from the plaintiff, both as trus-
tee and individually, her husband, her daughter Irene and the

latter's husband, to Hopkins, in which the grantors under-took to transfer to the grantee a fee-simple title to the four and a half acres, and which also contained a special war-ranty and a warranty of further assurance, then the deed of June 6, 1911, from Hopkins to the Laurel Four County Fair, Inc., and finally the deed from the last named grantee to the defendant, dated August 25, 1911. The defendant demurred to the amended bill, and the demurrer having been sustained by the learned court below, the plain-tiff has appealed.

The plaintiff's interest in the land in dispute is alleged to be an undivided one-fourth interest. The ownership of the remaining three-fourths interest was before this Court in the case of *Maryland State Fair, Inc., v. Basilicus H. Schmidt et al.,* 147 Md. 613, and we decided in that case that the three-fourths interest there involved did not pass under the deeds from Louisa Schmidt to the plaintiff, and from the plaintiff, her daughter and others, to Hopkins, and so to the Maryland State Fair, Inc., the defendant in that case as well as in this one, but was, on the contrary, vested in three of the children of Adolph and Louisa Schmidt, namely, Henry, Basilicus and Mary, as remaindermen under the original trust deed of 1888. It was also stated in the course of the opinion in that case that the Maryland State Fair, Inc., "has also acquired and holds the interest of Emma J. C. Boyle (the plaintiff here) in the whole property," and it further appears in that opinion that the four and a half acres involved is now part of the Laurel race track and because of this fact has been considerably enhanced in value. The plaintiff here was not a party to the case just discussed, and so the statement quoted from that opinion is not binding upon her, but it is obvious that the statement accurately de-scribes the effect of the deed of 1911 from the plaintiff, her daughter and others, to Hopkins, and that the defendant here has acquired the plaintiff's interest and title unless the bill alleges facts which would justify the Court in reform-ing or setting aside the deed in question. In fact, the plain-

tiff concedes that the deed of 1911 on its face conveyed a fee-simple title to Hopkins, and transferred the entire interest of the plaintiff to him, but she contends that the allegations of the bill are amply sufficient to warrant the interposition of a court of equity either on the ground of a mutual mistake, or on the ground of a mistake on her part and inequitable conduct or fraud on the part of Hopkins, acting as agent for the defendant.

Leaving out of consideration the question of whether the alleged mistake of the plaintiff was one of law or fact, concerning which matter there is a great deal of learning in the decisions and very little agreement, it would seem to be rather clear that the bill does not allege a mutual mistake.

The mistake made by the plaintiff did not arise from lack of knowledge that she had an interest in remainder, but was due to her alleged ignorance that the deed she signed would affect that interest. On the other hand, if any mistake was made by Hopkins, it arose from his failure to know that the plaintiff had an interest in remainder, and the bill does not even allege this; it simply says the plaintiff does not know whether Hopkins knew of this interest or not. There are allegations that Hopkins intended to acquire Irene Studds' title, and it is argued from this that he did not intend to acquire a fee simple title, because Irene did not have such a title. This contention ignores the deed which Hopkins got from Irene, the plaintiff, and others, which deed is part of the bill. That deed undoubtedly undertook to convey a fee simple title, and its provisions were amply sufficient to transfer all the interests of those who signed it. As a matter of fact, the bill and exhibits show that at the time Hopkins purchased the property the plaintiff was holding the legal title in trust for Irene, under a deed which purported to convey the property in fee simple, and as Hopkins secured a fee simple deed from the plaintiff and Irene, and there is no direct allegation that he did not intend to acquire a fee simple title, it is rather difficult to see how it can be held that the bill alleges any mistake on Hopkins' part as to what

he was getting.   He may have been mistaken as to the respective interests of the plaintiff and Irene, but it seems apparent that he wanted a fee simple title and thought he was getting it.   This mistake as to the plaintiff's interest, if it existed, is not similar to the plaintiff's mistake as to the effect of the deed she signed, and it seems very doubtful to us that such a state of facts would ever justify the interference of a court of equity.   However, in the present case the bill discloses other circumstances which, in our opinion, bar the plaintiff, and to prevent repetition these will be considered in discussing the charge of fraud brought by the plaintiff.

The appellant's next and alternative contention is that the mistake on her part was induced by the agents of the appellee falsely representing to her that the execution of the deed to Hopkins only affected any interest she might have under the trust deed of 1902, and so, inferentially, did not affect her interest as remainderman under the trust deed of 1888.   There can be no doubt of the power of equity to give relief where there is a mistake by one party, accompanied by fraud or other inequitable conduct on the part of the other party.  *Hesson v. Hesson,* 121 Md. 626; *Cohen v. Numsen* 104 Md. 679, 23 R. C. L. 328; 1 *Story's Equity Jurisprudence,* sec. 115; *Pomeroy's Equity Jurisprudence* (3rd ed.), sec. 1376.   And this rule applies even where the mistake involved is one of law.   23 *R. C. L.* 331; *Deisher v. Price,* 148 Ill. 383; 21 *C. J.* 96, and cases cited in notes.   The question, therefore, to be determined is whether the bill in this case alleges such fraud or other inequitable conduct on the part of the appellee as will justify the interference of a court of equity, it being conceded by both parties that the bill does sufficiently allege a mistake on the part of the appellant. The allegations bearing on this point are to be found in the ninth, tenth and seventeenth paragraphs of the bill, in which it is alleged in effect that the agents of the Laurel Four County Fair, Inc., advised the appellant she would have to join in the deed of 1911 to Hopkins, not only as trustee, but also individually, to protect the purchaser against a claim that

Irene Studds had died before attaining twenty-one years of age; that the appellant relied on these representations, that she was advised by the agents of the appellee that the sole reason for their requesting her to join in the deed was for the purpose of clearing the title they were purchasing from Irene Studds, and that the appellant does not know whether these agents, at that time, knew of the interest in remainder which the appellant held under the deed of trust of 1888.

The general rule is that the facts constituting the fraud charged must be set forth with certainty and particularity. *Wenstrom etc. Co. v. Purnell,* 75 Md. 120; *Miller's Equity,* sec. 93, p. 118, sec. 133, pp. 171, 172.

This has not been done in the bill now before us, unless it is unnecessary to allege that the party making the misrepresentation knew it was false. There may be cases in which such an allegation is not required, but we do not think this is one of them. The general rule is thus stated by Pomeroy in his *Equity Jurisprudence* (3rd ed.), sec. 888: "Where a person makes a statement of fact which is untrue, but at the time of making it he honestly believes it to be true, and this belief is based upon reasonable grounds which actually exist, the misrepresentation so made is not fraudulent either in equity or at law." There are exceptions to this rule, but we do not think the present case falls within any of the exceptions. The appellant here had certainly as good an opportunity to know her title as did the purchaser. In fact, she had an even better opportunity, because she actively participated in the transfers of the property incident to its partition, and had subsequently accepted from her mother a deed purporting to convey a fee-simple title to the four and a half acres which remained after the partition deeds had been executed. The very acceptance of this fee-simple deed of 1902 conveying the four and a half acres to her in trust for her daughter Irene, with a provision that she might herself acquire the full beneficial ownership, constitutes an element of estoppel against her present claim. In addition to this, there was no duty resting upon the pur-

chaser to advise the appellant of her rights. He had a right, in the absence of any notice to the contrary, to assume that she knew what title she had, and understood the effect of the deed which she signed. And it is significant that the bill does not allege that the appellant advised the purchaser that she owned any interest in remainder, or that she asked the purchaser whether the deed she was executing would affect that interest in any way. The charge of fraud or inequitable conduct rests solely on the allegation that the purchaser advised the appellant that the only purpose of her joining in the deed was to clear the title being purchased from Irene Studds, and there is no allegation that the purchaser did not believe this statement to be true. This is hardly sufficient to support a charge of fraud, but even if it were held that this part of the bill brought the appellant within that class of persons to whom equity will grant relief on the theory that they were misled, even though innocently, by the other party (See *Joice v. Taylor*, 6 G. & J. 58), there are nevertheless other circumstances shown by the bill which would preclude the appellant from obtaining relief.

Since there was no duty resting on the purchaser to advise the appellant of the legal effect which would flow from her execution of the deed of 1911, and no intentional misrepresentation is charged in the bill, it cannot be held that the purchaser actually did anything wrong in telling the appellant that the only reason for having her sign the deed was to clear the Irene Studds title. The most that can be said is that the appellant was misled by a misrepresentation innocently made by the purchaser, and that the former is entitled to relief on this ground. Under some circumstances this would be true, but here there are circumstances which would render the application of that doctrine highly inequitable. Louisa Schmidt died in 1917, and there is certainly no allegation in the bill that the appellant did not then know that she was entitled to her interest as remainderman. Yet she did nothing to assert her claim until March 26, 1925, when the bill in this case was filed. In other words, she slept on

her alleged rights for approximately eight years. She allowed the appellee to remain in possession, to pay the taxes, and to run the risk of the land decreasing in value, and now she suddenly comes in and claims it. The appellee has been in possession ever since 1911, claiming a fee simple title by virtue of the fee simple deed given its predecessor in title by the appellant, and, even assuming that the alleged ignorance of the appellant excused her from claiming the property prior to her mother's death in 1917, there is no allegation in the bill which gives any excuse for her delay from 1917 until 1925. No precise time for the establishment of an estoppel, or for the application of the doctrine of laches, can be laid down, because each case depends to a very large extent upon its own peculiar facts and circumstances, but the general rule is that "the person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position." *Pomeroy's Equity Jurisprudence* (3rd ed.), sec. 897, p. 1602. See also *Williston on Contracts,* vol. 3, sec. 1594. Here there was a delay of eight years, and we think, that under the circumstances of this case, such a delay rendered the appellant guilty of laches. *White v. Shaffer,* 130 Md. 361; *Dall Co. v. Butcher,* 135 Md. 24; *Byrd v. Rautman,* 85 Md. 414; 3 *Williston on Contracts,* sec. 1596. It is also to be observed that the bill nowhere alleges that the price paid by Hopkins to Irene Studds was not at the time of the purchase a fair price for the fee simple title which Hopkins obtained. It is true that the bill does allege that the appellant received no part of this consideration, but this, taken in connection with the statement that Irene "sold" her interest, and the expressed consideration of "five dollars and other good and valuable considerations" in the deed, is not a sufficient allegation that there was no consideration for the deed of 1911. It has frequently been decided by this Court that, in the absence of inequitable circumstances, a recital of consideration is con-

clusive between the immediate parties so far as title is concerned, and that where a consideration is actually paid, the fact that some of the grantors did not get their proper share of it will not affect the title of the grantee. *Wicklein v. Kidd et al.*, 149 Md. 412; *Combs v. Scharf*, 143 Md. 70; *Poole v. Poole*, 129 Md. 387. In the case now before us it must be assumed, since the bill does not allege the contrary, that Hopkins paid full value for the fee simple title which he secured, and as there is no allegation of any inequitable conduct on which the plaintiff had a right to rely, it follows, under the authorities just cited, that the title acquired by Hopkins cannot be questioned simply because the appellant did not secure part of the consideration from her daughter.

Another difficulty with the appellant's case is to be found in the two covenants which her deed contained. By the covenant of special warranty the appellant undertook to forever warrant and defend the property unto the grantee, his heirs, devisees, personal representatives and assigns, against the claims and demands of the grantor and all persons claiming or to claim by, through or under her (Code, art. 21, sec. 76), and by the covenant of further assurance she undertook and agreed to do whatever might be found necessary to perfectly and absolutely convey the property to the grantee, her heirs, etc., and assigns (Code, art. 21, secs. 81 and 82). The setting aside or reforming of a solemn fee simple deed, containing the two covenants just mentioned, should, in our opinion, require clear and positive allegations of fraud or mistake, particularly where the application of the party claiming to have been misled was not made until fourteen years after the deed was executed, and not until eight years after she admittedly knew of her rights and realized the alleged mistake she made in signing the deed.

And finally, the allegations of the bill intended to show that Hopkins, the original purchaser, was at that time the agent of the appellee, are meagre and unsatisfactory. It is alleged in several places that he was the agent of the appellee, but other allegations show that he was, at the time of

the purchase, the agent of the Laurel Four County Fair, Inc., that he subsequently conveyed the property in dispute to this corporation, and that his grantee, which is alleged to be "the corporate predecessor in interest and title" to the appellee, conveyed it to the appellee, and it is also alleged that the appellee is the "corporate successor" to the Laurel Four County Fair, Inc. There is no allegation that the stockholders of the two corporations were substantially the same people, no allegation that the second company was a reorganization of the first, or that they are the same except for a difference in name. In fact, there are no allegations except those set out above, and we are asked to infer from these that the appellee was not a *bona fide* purchaser for value, despite Exhibit "F" filed with the bill, which shows that the Laurel Four County Fair, Inc., conveyed several properties, including that in dispute, to the appellee "in consideration of five dollars and other good and valuable consideration." We do not decide that this lack of definiteness on this point would render the bill fatally defective, but when taken in connection with the other difficulties we have found in the appellant's bill it certainly does not strengthen her case.

In most equity cases considerable discretion is allowed the chancellor. The jurisdiction of equity grew out of the necessity of granting relief in cases where the rigidity of legal rules worked an injustice, or the limited remedies of the common law were inadequate, and it has always been the duty of the chancellor to weigh the conflicting equities of any cause brought before him, and to decide, where possible, in favor of the party who had the better equity. In the present case it is difficult to rest the decision on any one precise point. The appellant herself asks for relief on at least two different grounds, and has made alternative allegations in her bill, so that she herself is not quite clear as to the exact nature of her case. It is, however, entirely clear that so far as the law is concerned she has no remedy. The deed which she executed and permitted to stand unchallenged for fourteen years, while her grantee and his successors in title took

and held possession of the property, preclude her from pro-ceeding at law. She has accordingly appealed to a court of chancery on the theory that, despite the legal title of the appellee, she has an equitable claim to the property. This necessarily carries with it the claim that her equity is supe-rior, not only to the appellee's legal title, but also to any equities it may have obtained in the property by reason of the appellant's execution of the deed and long acquiescence in the appellee's possession and exercise of ownership. As we have already pointed out, the bill does not allege actual fraud, and it shows that the appellant executed a fee simple deed containing a special warranty and a covenant of further as-surance, that the purchaser paid a fair price for the title he obtained, that by *mesne* conveyances the appellee, for an alleged valuable consideration, secured title and possession, that it has held this title for fourteen years, in the meanwhile paying all public charges against it, that the appellant slept on her rights during the past eight years, and that, though she now claims an interest in the property she has made no offer to place the appellee in *statu quo*. And finally, it is doubtful if the allegations of the bill negative the inference, arising from the deed filed as Exhibit "F," that the appellee is a *bona fide* purchaser for value. In view of all these cir-cumstances, we do not think the bill shows that the appellant's equitable claim is superior to the equities which it shows the appellee possesses.

As was well said by the learned chancellor in deciding the case below:

"The facts disclosed set this case apart, and do not furnish any equitable ground why an alleged unilateral mistake of the plaintiff as to her title and interests under deeds and facts fully known to her should prevail against her own voluntary acts and representations by deed and her own covenants of warranty of title and further assurance. If she made a mistake, whether it be called of law or of fact, as to her rights, which she either knew or should have known by the exercise of the slightest degree of diligence to be reason-

ably expected of a person of ordinary intelligence and prudence, it is too late, after these years of delay, and her acts, deeds and covenants, to the prejudice of her grantee, to seek relief.

"It may be said, in conclusion, that it would, on the allegations admitted by the demurrer, be a most dangerous and subversive innovation to permit the motives of a grantor or his prior state of mind, for which the grantee was not responsible, to outweigh his explicit representations to the contrary by such a familiar, although solemn, instrument of writing as a deed of land, which is at once the last and controlling expression of the intention of the parties thereto, in the absence of fraud or mistake, in a legal sense."

We concur in this, and will accordingly affirm the decree sustaining the demurrer and dismissing the bill of complaint, without prejudice however to the plaintiff's right, if she desires, to make such amendments as the lower court may deem proper to allow.

*Decree affirmed, with costs.*