THERESE BILLINGS *v.* CLARENCE LIPPEL,
ASSIGNEE
SAME *v.* EDWARD J. RYAN, ASSIGNEE, ET AL.

[Nos. 2 and 51, October Term, 1944.]

*Decided December 7, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Charles G. Watson* for the appellant.

*D. Lindley Sloan* for the appellees, Ryan and Langan.

No appearance and no brief filed for the appellee, Lipppel.

COLLINS, J., delivered the opinion of the Court.

Herein considered are two appeals from the Circuit Court for Allegany County in equity. The facts in the first appeal are substantially as follows:

Therese Billings and John P. Billings, her husband, on May 7, 1923, executed to Susman Rosenbaum a mortgage in the amount of $8,000 on two properties, one known as the Walnut Street property on which there are two dwellings, and the other known as the Columbia Street property. After the death of John, Therese Billings, without consideration, conveyed the fee of the Walnut Street property to her son, George C. Billings. The mortgage was later assigned to Irving Rosenbaum. The mortgagors did not make the payments as provided in the mortgage, and notice of intended foreclosure was given.

On November 21, 1939, Irving Rosenbaum, mortgagee, Clersa F. Harman, and George C. Billings and wife entered into an agreement by which it was agreed that Clersa F. Harman should purchase the Columbia Street property from the Billings' by the assumption of the full mortgage on both properties due to Irving Rosenbaum in the amount of $7,000 and discharge said mortgage by payments of $50 monthly and paying all taxes, public charges and assessments against the Columbia Street property. The Billingses were to pay all taxes and public charges against the Walnut Street property. In paragraph six of said agreement there was a distinct provision that should default be made in the mortgage, the mortgagee could foreclose under the mortgage against both the Columbia Street property and the Walnut

4

Street property or either of them. By the seventh paragraph it was agreed that this instrument would in no way affect the lien of the mortgage against all the property therein. It was also specifically provided in the eighth paragraph of the agreement that the lien of the mortgage was continued against all of the properties covered by it until the principal amount and interest were paid in full and all the terms, conditions, and covenants of the mortgage were fully complied with.

It is evident that the purpose of the agreement was for the Billingses to sell the Columbia Street property and the payments therefore would pay the mortgage in full which also covered the Walnut Street property. This agreement, however, did not in any way curtail the rights of the mortgagee under the mortgage if in default. George C. Billings and wife later deeded the Walnut Street property back to Therese Billings and in 1939, simultaneously with the execution of the agreement aforesaid, the Columbia Street property was conveyed by Billings to Clersa F. Harman, subject to the aforesaid mortgage.

The payments promised under the agreement were not made to the mortgagee and on December 24, 1943, Clarence Lippel, attorney, the assignee of Rosenbaum for the purpose of foreclosure, after notifying Therese Billings of his intention to foreclose unless the mortgage was paid, filed mortgage foreclosure proceedings with bond against both the Columbia Street and Walnut Street properties.

On January 20, 1944, Therese Billings, by Charles G. Watson and Edward J. Ryan, solicitors, filed in the foreclosure case a petition stating that both properties were advertised that day at mortgage sale; filed and referred to the agreement hereinbefore set forth; and stated that by letting the default accumulate, the mortgagee had waived his lien in said mortgage against the Walnut Street property. The petition asked that the assignee be prohibited from selling any of the Walnut Street property at the sale then advertised and for an account. The

petition also asked for a hearing; that the Court declare that the lien against the Walnut Street property had been waived by delay in foreclosure; that the assignee be required to exhaust his remedy against the Columbia Street property, before proceeding against the Walnut Street property; and that an order be passed restraining the sale of the Walnut Street property until a hearing. On the same day the Court passed an order restraining the sale of the Walnut Street property until the rights of the parties could be determined upon filing of a bond in the amount of $8,000 to secure the fulfillment of such orders as the Court may pass. A certified check in the amount of $8,000 was deposited under the temporary restraining order. A joint demurrer and answer was filed by Clarence Lippel, assignee of the mortgage, and testimony taken.

It appears from the testimony that a Mrs. Cook, daughter of Mrs. Harman, was taking care of the payments. The first default occurred in May of 1940, and there were several defaults in payments in 1941-42-43. On October 30, 1943, at the time of making the last payment and when the amount owing on the principal and interest of the mortgage was alleged to be approximately $6,787.50, Mrs. Cook informed Mr. Rosenbaum that she could no longer continue to make the payments, and she was turning the property back to him. Mr. Rosenbaum testified that he did not know that Mrs. Harman had defaulted in the payment of taxes. The testimony further showed that the property was not in as good condition as when sold to Mrs. Harman and needed a lot of repair work.

On February 16, 1944, the Chancellor passed a decree reciting the fact that at the time the temporary restraining order of January 20th was passed, counsel for all the parties to the cause agreed in the Court's presence that the original sale advertised for that day be postponed until February 19, 1944, without any further advertisements or announcement other than a public announcement to be made by the auctioneer at the time and place at

6

which the said sale was originally advertised, which announcement by the auctioneer the Court found was properly made. He decreed that Clarence Lippel, assignee, on February 19, 1944, sell the property known as the Columbia Street property and if that property did not bring sufficient to pay the amount due under the mortgage and all costs and commissions, the assignee then immediately thereafter advertise and sell the Walnut Street properties in two separate parcels by first offering one and if the one did not bring a sufficient amount to pay the mortgage, costs and commissions, the assignee then offer and sell the other Walnut Street property, after which the two properties should be offered as a whole. The Chancellor further decreed that the petition of Therese Billings be dismissed.

After the dismissal of the petition by the decree, Edward J. Ryan, one of the solicitors for Therese Billings, filed on February 18, 1944, a petition for Mrs. Billings in the mortgage foreclosure case reciting the assignment and foreclosure of the mortgage, the filing of her former petition for an injunction and the fact that Edward J. Ryan had deposited a certified check for $8,000 to secure the restraining order. The petition also alleged that her attorney, Edward J. Ryan, for her, had made arrangements to finance the loan by taking an assignment of the Irving Rosenbaum mortgage to John Langan, who was willing to pay the amount due under the mortgage and the costs incident to said proceedings. She further stated that she was advised that the expenses of the proceedings to date and the mortgage debt were $7,411.82. She asked the Court that an order be passed directing the clerk to deliver to Edward J. Ryan the check for the sum of $8,000 heretofore deposited by him under the temporary restraining order so that the check might be used to finance the mortgage. Edward J. Ryan and Langan were brothers-in-law and this $8,000 was evidently Langan's money. She also asked that Clarence Lippel, assignee of the mortgage, be authorized and directed to assign the mortgage to John Langan. Clarence Lippel,

as assignee of the mortgage and as attorney for Irving Rosenbaum, consented to the passage of the order. Whereupon the Chancellor on the 18th day of February, 1944, by order, directed the clerk of the Court to deliver to Edward J. Ryan, attorney for John Langan, the aforesaid check of $8,000 and that Clarence Lippel be authorized and directed to assign unto John Langan the mortgage mentioned in these proceedings upon the receipt of the sum of $7,411.82. He also ordered that the original mortgage filed in the case be withdrawn from the foreclosure proceedings.

From the decree Charles G. Watson, solicitor for Therese Billings, appeals to this Court, which is the first appeal here considered.

The appellant contends that by giving no notice to Mrs. Billings until a few days before the mortgage foreclosure that Mrs. Harman was not living up to her contract, the mortgagee was careless and neglectful of his duty and had waived any lien which he had against the Walnut Street property and estopped from a foreclosure against the Walnut Street property. Much stress is laid by the appellant on the case of *Wright v. Wagner*, 182 Md. 483, 34 A. 2d 441. That case is not in point. Without pointing out in detail the difference, it is enough to note that that case involved a judgment *in personam* after the mortgage foreclosure, but in no way affected the right of the mortgagee to foreclose under his mortgage, nor was there a specific reservation of the covenants of the mortgage in that case as was retained under paragraphs six, seven, and eight of the agreement filed in this case. This is not a case where the mortgagee is seeking a personal judgment or decree against the mortgagors. *George v. Andrews*, 60 Md. 26, 45 Am. Rep. 706; *Chilton v. Brooks*, 72 Md. 554, 557, 20 A. 125; *Asbell v. Bldg. & Loan Ass'n*, 156 Md. 106, 111, 143 A. 715; *East End Loan & Savings Ass'n v. Berman*, 170 Md. 536, 539, 185 A. 332.

We are concerned with the right of the mortgagee to foreclose after default and sell the property covered by the mortgage not with the personal liability of the mort-

gagor. A mere delay in foreclosing is simply an indulgence to the principal debtor and not an alteration of the terms of the instrument. *Powell v. Hopkins,* 38 Md. 1; *Lake v. Thomas,* 84 Md. 608, 36 A. 437; *Golden v. Kovner Bldg. & Loan Ass'n,* 156 Md. 167, 176, 143 A. 708. There was no agreement in the contract in this case that the mortgagee would use diligence in foreclosing the mortgage. The evidence shows that the mortgagor lived within a block of the Columbia Street property, and it is difficult to understand why she or some one in her behalf did not make inquiry as to whether Mrs. Harman was making the payments required under the contract. As the mortgage contained a provision for foreclosure in case of default and the agreement in no way curtailed the foreclosure provision but reaffirmed it, we concur with the Chancellor in his dismissal of the petition filed by Therese Billings in the mortgage foreclosure case.

By the second appeal are presented the subsequent facts. On May 4, 1944, over two months after the decree in the former case was passed, Therese Billings by Charles G. Watson, her solicitor, filed a bill of complaint in the Circuit Court for Allegany County against Edward J. Ryan, assignee, and John Langan, reciting in effect that she was the owner of the Walnut Street property aforesaid; the execution of the mortgage to Susman Rosenbaum, heretofore referred to; the execution of the agreement by Clersa F. Harman, Rosenbaum and Billings, heretofore referred to. She alleged that Mrs. Harman had immediately turned the property over to her daughter and son-in-law, Mr. and Mrs. Cook, who had collected the rents, failed to make repairs and the payments called for under the agreement and were ready to have it sold at public sale and buy it in at a low price. She also stressed the neglect of Rosenbaum in failing to collect the payments. She further said that Clarence Lippel had flatly refused to sell the Columbia Street property first as ordered in the decree in the foreclosure case. She recited the assignment of the mortgage through Ryan to his brother-in-law, Langan; that the Columbia Street prop-

erty was sold by Langan at private sale to the Cooks for $6,000 through Cook's fraudulent scheme in violation of the mortgage contract and decree of the Court. She further said that Langan, by joining in the deed to the Cooks, had released the mortgage in full. She had refused to sign a new mortgage on the Walnut Street property for $2,301.56 presented to her by Ryan as the balance of her obligation to Langan. She stated that Langan has since assigned the mortgage to Edward J. Ryan for the purpose of foreclosure, and as assignee, Ryan had advertised the Walnut Street property for sale at public auction on the 24th day of May, 1944. She recited that she employed Mr. Ryan to help Mr. Watson to stop the sale of the Walnut Street property and is now advised that Mr. Ryan, as assignee, is selling the same property by virtue of the same mortgage. She asked that John Langan and Edward J. Ryan be permanently enjoined from selling or in any way disturbing her in the possession of the Walnut Street property by virtue of said mortgage and that a decree be passed declaring said mortgage no longer a lien on the Walnut Street property. With this bill of complaint, she filed the agreement of November 21, 1939, hereinbefore mentioned, between Clersa F. Harman, George C. Billings and Irving Rosenbaum. A demurrer was filed to the bill of complaint, and by a decree passed on the 9th day of June, 1944, the Chancellor sustained the demurrer and dismissed the bill of complaint. From that decree the complainant, Therese Billings, appeals to this Court and this appeal becomes the second case herein considered.

By petition filed in the former case on February 18, 1944, hereinbefore recited, she asked the Court to pass an order directing the return of the $8,000 check to Edward J. Ryan in order that it might be used in financing the mortgage and also asked that the Court direct Lippel and Rosenbaum to assign said mortgage to John Langan. Nowhere did she ask that this assignment be made subject to the conditions of the decree. As requested by her the check was returned, the money paid by Langan, and

for a valuable consideration, the mortgage absolutely assigned to Langan. Nowhere in the proceedings is there any allegation that Ryan in filing this petition did not act with the consent of Mrs. Billings. She, having therefore asked for an assignment to Langan without any reservations after the decree, is estopped from asserting the restrictions called for in the decree. Furthermore, the original mortgage was withdrawn from the foreclosure proceedings and assigned to Langan by order of Court.

The bill of complaint attempts to allege fraudulent designs on the part of Irving Rosenbaum, John Langan, Edward J. Ryan and the Cooks. A general statement of fraud, however strong in expression, is not sufficient unless there is a statement of the circumstances relied on as constituting the alleged fraud. *Miller's Equity Procedure*, p. 118. "An allegation of fraud may be made upon belief only when the facts are set forth upon which that belief is reasonably founded." *Homer v. Crown Cork & Seal Co.*, 155 Md. 66, 74, 141 A. 425, 429; *Oakford Realty Co. v. Boarman*, 156 Md. 65, 72, 143 A. 644. Charges of fraud are not regarded as sufficient in law unless accompanied with the allegations of the facts and circumstances which constitute the fraud. *Ragan v. Susquehanna Power Co.*, 157 Md. 521, 527, 146 A. 758.

As to the fraud alleged against Irving Rosenbaum, this Court decided in the case hereinbefore considered that Rosenbaum had the legal right to foreclose the mortgage, and we therefore fail to see any fraud on his part. John Langan is the assignee of a mortgage in default, and the mortgage contained a power to foreclose. As to the actions of Edward J. Ryan, her attorney, from the petitions and bill of complaint filed, it appears that he posted a certified check in the amount of $8,000, apparently being money of his brother-in-law, John Langan, in order to obtain the temporary restraining order from the Court. After the Court dismissed the petition filed by him and Charles G. Watson, as solicitors for Mrs. Billings, he arranged for John Langan to take over the mortgage by

use of the $8,000 check aforesaid, thereby abandoning the foreclosure proceedings. He then arranged for Mrs. Harman to sell the Columbia Street property at private sale to the Cooks for $6,000 and had Langan join in the deed for the purpose of releasing the mortgage against the Columbia Street property. After the $6,000 was credited on the old mortgage indebtedness, he endeavored to have Mrs. Billings execute a new mortgage on the Walnut Street property for the balance of her obligation which was alleged to be approximately $2,301.56. After Mrs. Billings refused to do this and acting for Langan who had refinanced Mrs. Billings' mortgage at Ryan's request, he then proceeded for Langan to foreclose the mortgage on the Walnut Street property in order that Langan might recover his money. There is no allegation that the price of $6,000 for the Columbia Street property was not a fair value. We can only conclude that the allegations now before us fail to show fraud on the part of Edward J. Ryan. As to fraud on the part of the Cooks, they are not made parties to these proceedings, and we are therefore unable to pass upon that point. We therefore conclude that there is no statement of sufficient circumstances to constitute fraud such as to sustain the bill of complaint.

The question next arises as to whether John Langan, holding a mortgage from Therese Billings on both the Walnut Street property and the Columbia Street property and knowing that the Columbia Street property had been sold to Mrs. Harman, in releasing the mortgage against the Columbia Street property for $6,000 without the consent of Mrs. Billings, who owned the Walnut Street property, thereby should be considered to have released the mortgage in full and therefore whether this Court should decree that said mortgage is no longer a lien on the Walnut Street property. Where a mortgagee voluntarily releases and surrenders a part of the property secured by the mortgage, the mortgage is discharged to the extent of the value of such mortgaged property released and surrendered. *Williston on Contracts*, Re-

vised Ed., Secs. 1232, 1234, 386; *Fresner v. Yingling*, 37 Md. 491, 499; *Dirks v. Humbird*, 54 Md. 399, 404; *Prodis v. Constantinides*, 167 Md. 33, 37, 172 A. 286. There is no allegation in the bill of complaint that this sale and credit were made without the consent of Mrs. Billings. Assuming, however, that they were, there is no allegation that $6,000 was not a fair value for the Columbia Street property, and in the absence of such an allegation, we are unable to conclude from the allegations of the bill that a proper credit was not given on the original mortgage and thereby that the old mortgage was released in full. There was an agreement whereby the Columbia Street property was to be sold in November, 1939, for $7,000 and in 1943 for $6,000. However, the complainant, herself, alleges that the Cooks allowed the property to run down and it was in a deplorable condition.

The bill of complaint, therefore, not alleging circumstances sufficient to constitute fraud, and there being no allegations that the sale and credit were made without the consent of Mrs. Billings, and that the credit given on the mortgage was not a fair valuation of the Columbia Street property, and as those facts cannot be assumed, we concur with the Chancellor that the demurrer should have been sustained and the bill of complaint dismissed.

*Decrees affirmed in both cases, with costs.*