EDISON REALTY CO. ET AL. *v.*
BAUERNSCHUB ET UX.
[No. 16, October Term, 1948.]

454

*Decided November 11, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*H. Mortimer Kremer*, with whom were *Harry S. Kruger* and *Jacob D. Hornstein* on the brief, for the appellants.

*Herbert E. Witz*, with whom was *James Morfit Mullen* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for specific performance and other equitable relief was instituted by Joseph M. Bauernschub, a war veteran, and his wife, Evelyn Bauernschub, who entered into a contract August 19, 1946, to purchase from Edison Realty Co. a house, when completed, at 2815 East Federal Street in the City of Baltimore. Defendants are the realty corporation and its officers, Harry Bart, president, Fred Bart, treasurer, and Sara Bart, secretary.

Complainants allege that they agreed to pay $9,000 for the property, and that the corporation, which had begun the erection of about 116 houses under the Federal housing program for veterans, promised, by oral agreement collateral to the written contract of sale, that the house would be completed and would contain all of the features of a sample house in the development. On January 15, 1947, complainants were informed by an agent of the corporation that the house was substantially completed, and, if any items were not completed, they would be completed promptly after settlement. Relying upon those assurances, complainants paid the corporation a total of $4,000 in cash and gave a mortgage on the property for $5,000 financed under the "GI Bill of Rights."

Complainants allege, however, that they were not permitted to inspect the interior of the house until after they had settled and received a deed for the property; and afterwards they discovered that the house was not completed in accordance with the contract. They assert that for more than six months they constantly importuned defendants to complete the contract, but they ignored the demands and refused to remedy the defects. Complainants charge that when defendants promised to complete the house, they had no intention of performing the obligations, but on the contrary made the promises in order to induce them to pay for and accept an uncompleted house. They claim that such acts amounted to fraud. They further say that they and about thirty others who bought houses from defendant corporation formed a committee for their joint protection, but the members of the committee were treated by defendants with scorn.

It is alleged in the second amended bill that complainants discovered after the filing of the original bill that details of construction were stipulated in specifications filed with the Federal Housing Administration and in plans filed with the City of Baltimore; and that defendant thereby obtained priorities for materials used in construction; and the price which the F. H. A. authorized defendant to charge for the house was based thereon. Complainants claim that even though they were not aware of the plans and specifications at the time of the oral agreement, yet they are entitled to have their house comply with them.

Complainants further allege that they have suffered great damage and inconvenience as a result of defendant's failure to complete the house in accordance with the agreement; that, as one example of their damage, water runs into the house after every heavy rain, and they have been compelled to spend much time in bailing out and mopping up water in the basement. They believe the corporation has only "meager assets," and therefore they have no adequate remedy at law, because the corporation has no sufficient assets out of which a judgment

for damages could be satisfied; and they believe defendants are conspiring to deprive them of their rights.

The bill prays (1) that defendants be compelled to perform the contract for the completion of the house and to furnish all the items to which complainants are entitled; (2) that if it is impossible to perform fully in accordance with the agreement, complainants be awarded damages for any items not furnished; (3) that complainants be awarded damages for losses and inconvenience caused by breach of contract; (4) that defendants be enjoined from continuing the erection of other houses in the project; and (5) that receivers be appointed for the corporation and such other defendants as the circumstances of the case may require.

Defendants demurred to the second amended bill and the chancellor overruled the demurrers. From that order defendants appealed to this Court.

In England there was confusion for many years as to how far courts of equity ought to entertain suits for specific performance of a covenant to build or rebuild a house of a specified form and size on particular land. In *City of London v. Nash,* 3 Atk. 512, 515, Lord Hardwicke recognized the power of the court in this respect, but said that the court should not specifically enforce a covenant to make repairs to a house. The ground of his opinion in that case, which was between a landlord and tenant, was that on the covenant to repair the tenant might have a remedy at law. In some of the later decisions, however, it was held that no covenant to build or rebuild ought to be enforced specifically in equity. It was considered that there could be adequate compensation in damages in a court of law, and a court of equity ought not to undertake to construct a building any more than to make repairs. *Lucas v. Comerford,* 3 Bro. Ch. 167; *Errington v. Aynesly,* 2 Bro. Ch. 343. But the English courts finally adopted the rule that they would decree specific performance where the defendant has entered into a contract to construct on his own land work which is clearly defined, and the complainant has a material interest in its per-

formance, and failure to perform is not susceptible of adequate compensation in damages. *2 Story, Equity Jurisprudence,* 14th Ed., secs. 1006-1008.

In this country it has generally been held that specific performance of a contract to build or do work upon land is usually refused where the land is in the possession of the complainant, upon the theory that complainant himself could have the work done and then sue for damages in a court of law. *McCormick v. Proprietors of Cemetery of Mt. Auburn,* 285. Mass. 545, 189 N. E. 585. In Maryland it is provided by statute that no court shall refuse to specifically enforce a contract on the ground that the party seeking its enforcement has an adequate remedy in damages, unless the party resisting the enforcement shall show that he has property from which such damages may be made, or shall give bond as therein provided. Laws of 1888, ch. 263, Code 1939, art. 16, sec. 255. The purpose of the Act of 1888 is to abolish the technical defense in suits for specific performance that the complainant has an adequate remedy at law, and thus prevent a defendant who has entered into a binding contract from repudiating it by electing to pay such damages for its breach as a jury might award in an action at law. *Neal v. Parker,* 98 Md. 254, 57 A. 213. So, we hold in this State that where complainants have purchased land improved by an unfinished house and the vendor has installed an insufficient heating apparatus, or has failed to do certain work which he agreed to do, the court of equity has power to decree specific performance, where the work which has not been performed is clearly defined, and the vendor has not complied with the specific performance statute. *Brummel v. Clifton Realty Co.,* 146 Md. 56, 125 A. 95.

The bill in this case alleges that complainants entered into a written contract with the corporation and also a collateral oral agreement. The law is clear that a *prima facie* presumption arises from the acceptance of a deed that it is an execution of the entire agreement for the sale of the realty, and the rights of the parties in relation

to the agreement are to be determined by the deed. However, parol evidence may be given of collateral facts relating to an agreement for the sale of realty, even though a deed has been executed, if the facts are consistent with the deed and do not tend to contradict it. *Stevens v. Milestone*, 190 Md. 61, 65, 57 A. 2d 292.

Complainants claim that agents of the realty corporation promised that the house would have weatherstripping, insulation, copper spouting, hardwood floors, fully equipped kitchens, and various other improvements. They filed a long list of items which were not furnished, and also a list of deviations from the plans and specifications. While it is not necessary for us to consider every one of the items, there are at least some items which are certain enough to be the subject of specific enforcement. In *Jones v. Parker*, 163 Mass. 564, 40 N. E. 1044, 1045, 47 Am. St. Rep. 485, the Supreme Judicial Court of Massachusetts held that a covenant in a lease to deliver possession of part of a basement in a building to be erected, and to "reasonably" heat and light the building during the term of the lease, can be specifically enforced after the completion of the building. Justice Holmes said in the opinion of the Court: "With regard to the want of certainty of the covenant, if the plaintiff were left to an action at law a jury would have to determine whether what was done amounted to a reasonable heating and lighting. A judge sitting without a jury would find no difficulty in deciding the same question. We do not doubt than an expert would find it as easy to frame a scheme for doing the work. The other question is practical, rather than a matter of precedent. It fairly is to be supposed, in the present case, that the difference between the plaintiff and the defendants is only with regard to the necessity of some or more elaborate apparatus for light and heat—a difference which lies within a narrow compass, and which can be adjusted by the court."

It may be argued that the court should not award relief to complainants because such relief would be so complicated as possibly to require a multiplicity of orders

by the court in its efforts to superintend the details of the work which complainants contend should be done. We accept the rule that specific performance will not be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and to the harm to be suffered in case it is denied. *Ward v. Newbold,* 115 Md. 689, 81 A. 793, Ann. Cas. 1913A, 919; 2 *Restatement, Contracts,* sec. 371. However, the fact that enforcement of a contract may require a multiplicity of orders by the court in its endeavor to superintend the work to which it relates does not deprive the court of jurisdiction, but only justifies its refusal in its sound discretion to exercise the jurisdiction. *Standard Fashion Co. v. Siegel-Cooper Co.,* 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749. It is within the power of the chancellor to enforce the agreement alleged by the bill, although the difficulties attending the enforcement may be so great that the court would ordinarily refuse to undertake it. While it is true that the chancellor may in his discretion refuse to give relief on account of the difficulty of enforcing the decree, that fact does not make the bill defective. It is the function of the chancellor to decide whether he should decline to decree specific performance owing to the fact that such constant superintendence of the work would be required as to make the execution of the decree extremely difficult, if not impossible. It is not want of jurisdiction but doubt of feasibility that stays the hand of the court. A general demurrer must be founded upon the proposition that, assuming the allegations in the bill to be true, the complainant has no cause of action. The question which a demurrer raises does not relate to propriety and discretion, but to the authority of the court to grant relief. As the bill states a good cause of action against the corporation, its demurrer was properly overruled.

However, we find no reason to overrule the demurrers of Harry Bart, Fred Bart and Sara Bart. The amended

bill does allege that Harry, Fred and Sara Bart conspired in a fraud. But it is well settled that the facts constituting a fraud charged in a bill of complaint must be set forth with certainty and particularity. A general allegation of fraud, however strong in expression, is not sufficient unless there is an allegation of the facts and circumstances relied on as constituting the alleged fraud. *Boyle v. Maryland State Fair*, 150 Md. 333, 341, 134 A. 124; *Billings v. Lippel*, 184 Md. 1, 10, 40 A. 2d 62. In the instant case there are no allegations of any specific acts of fraud on the part of the individual defendants. A fraudulent conspiracy, sufficient to serve as the basis for an action in a civil case, is the confederation of two or more persons to cheat and defraud, when the design has actually been executed by the confederates with resulting damage to their victim. Since a breach of contract is unlawful, it is unlawful for a third person knowingly to aid the maker of a contract in breaking it. If the maker combines with others to break the contract, their conduct is a conspiracy which entitles the other party to the contract to recover against the conspirators any damages he may sustain. *Western Maryland Dairy v. Chenowith*, 180 Md. 236, 243, 23 A. 2d 660. But where the loss to the complainant was not caused by any breach of legal or equitable duty, it is *damnum absque injuria*. *Bachrach v. Washington United Cooperative*, 181 Md. 315, 322, 323, 29 A. 2d 822. In this case the bill alleges a breach of contract, but there is no allegation of any specific act of fraud committed at the time of the execution of the contract, and no allegation of any specific act of conspiracy to break the contract. Consequently, the demurrers of the three co-defendants should be sustained.

*Order affirmed in part and reversed in part, and cause remanded, with costs to appellants.*